THE PEOPLE, ex rel. THE GERMAN-AMERICAN LOAN AND TRUST
COMPANY, Appellant, *v.* SAMUEL RICHARDS, as Register,
etc., Respondent.

(Argued April 14, 1885 ; decided April 21, 1885.)

THE opinion in this case, which is given in full, states the
nature of the proceedings and the material facts.

"The relator was incorporated by chapter 392 of the Laws
of 1882, as amended by chapter 367 of the Laws of 1883.
Among the powers granted by its charter is one to guarantee
bonds and mortgages and titles to real estate, and to make and
cause to be made, and to purchase and pay for such searches,
abstracts, indices, maps and copies of records as its trustees
may deem necessary. The relator alleged that in July, 1883,
its employes, Spencer and Reed, were by the defendant, the
register of deeds of the county of Kings, refused the oppor-
tunity and privilege of making searches and copies of records
in his office, and it thereupon made a motion at Special Term
of the Supreme Court for a peremptory *mandamus* command-
ing him to allow such employes to make such searches and
copies of records. The motion was based upon several affi-
davits on the part of the relator, and opposed by affidavits on
behalf of the defendant ; and the court ordered that a per-
emptory *mandamus* be issued, commanding the defendant
to allow Spencer and Reed, as employes of the relator, to

make such searches and copies of records as they might be directed to make by the relator. From that order the relator appealed to the General Term, where it was reversed on the ground, as appears by the opinion of the court, that the defendant had exercised a reasonable discretion in allowing the employes of the relator to make searches and copies of records, and that, therefore, it was not a proper case for issuing the peremptory *mandamus* asked for. From the order of the General Term the relator appealed to this court.

" As this was an application for a peremptory *mandamus* we must take the facts, so far as they are disputed, as they appear in the affidavits on the part of the defendant. (*People, ex rel. Lawrence*, v. *Board of Supervisors of Westchester Co.*, 73 N. Y. 173; *People, ex rel. Mott*, v. *Board of Supervisors*, 64 id. 600; *People, ex rel. Hartford Life Ins. Co.*, v. *Fairman*, 91 id. 385; Code of Civ. Pro., § 2070.) It appears from those affidavits that in the register's office there are about four thousand large books in which are recorded conveyances, mortgages, satisfaction-pieces and the indices thereto; that in addition to such books there are kept and preserved as matters of public records maps of and relating to real estate, and all chattel mortgages filed since 1852; that the office is in use constantly by the public engaged in searching titles to real estate; that in the office where the books and records are kept is done the work of recording deeds, mortgages and satisfaction-pieces brought into the office for record, and searching titles under requisitions to the register as provided by law; that in the same office all papers are received and delivered, and the general work of the register is transacted; that in addition to the work and business specified, a large amount of work is done there by private persons, lawyers and experts in ascertaining the titles to real estate, and making searches which are unofficial for the purpose of current business in actual transactions pending; that in May, 1883, Spencer came to the office claiming to be in the employ of the New York Title Company, and representing that he wanted to put a number of men at work to obtain copies of records in the office, and saying, in effect, that these men were to be employed, not about the business or work of examining titles for transactions then being made, but

that their business was to copy the records of the office, and accumulate information, so that it would be of value to the company as matter of sale, merchandise or information in the business of searching titles in which it was about to engage; that he represented that he wanted to put from a dozen to twenty or twenty-five men in the office for that purpose; that the defendant told him it would be impossible to have so many men as that for the reason that it would interfere with the current business of the office; that it was finally arranged that Spencer might put three men at work in the office, he agreeing not to ask for any more, and that the three men were put to work under that arrangement; that some time afterward Spencer came to the office with Reed, who commenced copying a book apparently under Spencer's directions, when the defendant remonstrated with him for violating the arrangements, in thus setting another man at work, and Spencer replied that it was for another company, the relator; that the defendant objected, and closed the book, whereupon both Spencer and Reed left the office; that the defendant did not object to the employment of three men, as arranged, to work in the office, but did object to any greater number. The defendant also stated in his affidavit that he gave Spencer all the facilities which he deemed were consistent with the rights of the public in the office, and as much as could be given without interfering with those who were engaged in the business of current searches and examinations of titles; that the three men were an actual obstruction to the current business of the office; that he was informed and believed that the relator herein and the New York Title Company were one and the same company, and that Spencer was employed by persons who were officers of both companies; that he was willing that three men should be placed there to accumulate information for either of these companies, but that, in his judgment, he could not allow more than that number without seriously interfering with the regular business of the office.

There was proof tending very strongly to show that the two companies were both under the same control and working to the same end. The same persons were president, vice-president, secretary and treasurer of both companies. All the direc-

tors of the New York Title Company were also directors of the relator, and constituted a majority of its directors, and Spencer seemed to be the agent of both companies. Under these facts we cannot say that the court below, in the exercise of its discretion, improperly refused to allow the *mandamus* to issue. Under the laws applicable to the register of Kings county, he is the custodian of all the books and records in his office. (Laws of 1852, chap. 83, § 7; § 2, chap. 3, part 2, R. S.; § 50, art. 2, title 2, chap. 3, part 3, R. S.) But it is provided that such records shall "at all proper times be open for the inspection of any person paying the fees allowed by law." These records are, therefore, public records which every person has the right to inspect, examine and copy, at all reasonable times, in a proper way, and the register cannot deny access to his office or to the books for such purposes, to any person coming there at a proper time and in an orderly manner. But he must necessarily have control of his office and of the records, and must have some discretion to exercise as to the manner in which persons desiring to inspect, examine and copy the records may exercise their rights. He must transact the current business of the office and allow all persons reasonable facilities to exercise their rights in his office. He cannot give the right to one person or one corporation to occupy his office to the exclusion of others, and each person must exercise his rights in the office consistently with the exercise of similar rights by others. It is clear that this relator could not properly put twenty-five or thirty men into the office and thus block up the office and interfere with the register in the discharge of his duties. He must have some right to say how many persons the relator could send there to work at one time. It was finally agreed between Spencer, the agent of the two companies, and the relator, that three persons might be placed there to do this work. It was only when an additional man wa attempted to be brought in by Spencer that the defendant made serious objection on the ground that no more than three men representing the companies could be allowed there without interfering with the current business of the office. The business of these two companies seems to have been identical, or at least connected, and it is plainly inferable that the searches and copies from the records

were to be obtained for the benefit, in some way, of both, and hence the case may be treated as if Spencer and the three persons there at work by his direction were at work for both companies. The relator's right, therefore, to have greater facilities and privileges in the office was not so clear that we can say the court below erred in refusing to issue the peremptory *mandamus*, which cannot always be demanded as matter of right.

"We are, therefore, of opinion, that the order should be affirmed, with costs."

*Charles M. DaCosta* and *Julien T. Davies* for appellant.

*Jesse Johnson* for respondents.

EARL, J., reads for affirmance.
All concur.
Order affirmed.