PEOPLE ex rel. GUARANTEE CO. v. REILLY.     429

First Department, January Term, 1886.

THE PEOPLE OF THE STATE OF NEW YORK ex rel.
THE TITLE GUARANTEE AND TRUST COMPANY,
Appellant, v. JOHN REILLY, as Register in and for the
City and County of New York.

*Right of the public to make searches and copy maps, etc., in the register's office of New
York city — chap.* 410 *of* 1882, *secs.* 1742, 1747, 1751 — 1882, *chap.* 392, *as amended
by chap.* 367 *of* 1883, *and chap.* 167 *of* 1884 — *power of the register to regulate the
conduct of persons making searches — to require them to be made under the obser-
vation of a custodian — to exclude them for insolence.*

Sections 1747 and 1751 of chapter 410 of 1882 make it the duty of the register
of the city and county of New York to permit all persons to have free access
to the books, records and indices of the office for search at all reasonable
times during the day time, and to exhibit the same to persons wishing to
make such searches.

Under the authority " to make and cause to be made, and to purchase and to
pay for, all such searches, abstracts, indices, maps and copies of records, as
the trustees thereof may deem necessary," conferred by section 2 of chapter
367 of 1883, upon The Title Guarantee and Trust Company, the relator
herein, such company is entitled to examine, by persons in its employment,
the books, records, maps and papers of the register's office, and to make
searches, abstracts and copies of the records, so far as that may be considered
necessary to place itself in a position to examine and afford the means of
examining title without afterwards resorting to the register's office.

In case the register should refuse to allow such examination to be made, a *man-
damus* would be granted compelling him to permit it to be done.

The register has, however, the power to exercise a reasonable discretion in the
care, management and government of his office, and the preservation of the
books and records contained therein, and, so far as that discretionary power
extends, the register is entitled to exercise it according to his best judgment
to secure the good order of his office and the preservation of the books
and papers committed to his custody. To that extent his powers and
duties are not subject to be interfered with or controlled by a writ of
*mandamus.*

Section 1742 of chapter 410 of 1882 authorizes the register to assign one or more
suitable persons in his office to have the custody of the records during office
hours, in whose presence, under the direction of the register, all examinations
of the records shall be made.

*Held,* that the fact that the register permitted persons, other than those employed
by the relator, to examine the records without being subject to the observation
or surveillance of his custodian, did not prevent him from compelling the
persons employed by the relator to make their examination under such
observation.

That the question as to whether or not additional custodians should be appointed was in a great measure confided to the judgment and discretion of the register, which when fairly exercised should not be controlled or overruled by the court.

The fact that the persons employed to make searches, extracts and copies are insolent to the register justifies him in excluding them from the office.

The proper form of writ to issue in such a case stated.

APPEAL from an order denying a motion that a writ of peremptory *mandamus* issue directed to the register of the city and county of New York commanding him to allow certain attorneys and clerks of the relator to examine the records in his office.

*Charles M. Dacosta, Julien T. Davies* and *C. H. Kelsey*, for the relator.

*B. F. Dunning* and *Thomas H. Edsall*, for the respondent.

DANIELS, J.:

The relator is a corporation, incorporated under chapter 392 of the Laws of 1882, by the name of the German-American Loan and Trust Company of the city of New York. By chapter 167 of the Laws of 1884, its corporate name was changed to the Title Guarantee and Trust Company. Its powers have been fully defined by section 2 of chapter 367 of the Laws of 1883, amending section 9 of its charter. Among these is the power given to it " to guarantee bonds and mortgages and titles to real estate."

In the course of its business, an application was made to it for a guarantee policy to the amount of $30,000 upon the title to certain lands on One Hundred and Forty-seventh street, in the city of New York, and persons in its employment were assigned to search the title of the land at the office of the register, the respondent in this case. According to the affidavits which have been produced, they were prevented from doing so by the interposition of the register and persons officially in his employment, who declined to permit them to examine the records of deeds and mortgages in his office. The register himself seems to have been under the conviction that it was not the purpose of the relator' to search the title of the piece of land already mentioned, but that its real object was to acquire information, from the examination of the books and maps of the office, " to create a

PEOPLE ex rel. GUARANTEE CO. v. REILLY.

First Department, January Term, 1886.

set of books and of maps, by means of which all information necessary to enable a conveyancer to examine a title with speed and accuracy, can be placed at his disposal, within a short time after he has made a requisition upon the companies," and that he was not legally obliged to permit the examination of the records and maps of the office for the accomplishment of this object. And to prevent that, the persons assigned by the relator to duty in his office were not permitted to examine the records, maps and papers of the office. But the register and those acting under him were not authorized to prevent the examination of the books, records and maps of his office by the persons in the employment of the relator, whether it was to ascertain the condition of the land referred to, or to create books and maps of its own, by which titles to real estate could be more speedily and accurately examined than that could be done in the register's office. For, by sections 1747 and 1751 of chapter 410 of the Laws of 1882, it has been made the duty of the register to permit all persons to have free access to the books, records and indices of the office, for search at all reasonable times during the day time, and he has been directed to exhibit the same to persons wishing to make searches. And that clearly authorized the relator to search the title to the land for which, it was stated, it had received and accepted an application for a guarantee policy.

But if it was not the real, as it was the expressed, object of the relator to search the title of that land, but to examine the books, maps and papers of the office to create a set of books of its own, from which searches of titles could afterwards be made, the register was not authorized to defeat the efforts designed to be made by the relator to secure this end. For, by section 2 of chapter 367 of the Laws of 1883, it was authorized " to make, and cause to be made, and to purchase and to pay for, all such searches, abstracts, indices, maps and copies of records, as the trustees thereof may deem necessary." This power is sufficiently broad and comprehensive to entitle the relator, by persons in its employment, to examine the books, records, maps and papers of the register's office, and to make searches, abstracts and copies of the records, so far as that may be considered necessary, to place itself in a position to examine and afford the means of examining titles, without afterwards resorting to the register's office. The power given to the relator for this

432 PEOPLE ex rel. GUARANTEE CO. v. REILLY.

FIRST DEPARTMENT, JANUARY TERM, 1886.

purpose is unqualifiedly broad, and entitled it to acquire the information necessary to do what the register himself suspected it was the real object and purpose of the relator to secure. In his suspicions he was probably correct, even though the relator ostensibly desired to examine this particular title, for it was proposed to examine the records of the office thoroughly and completely and to make such extracts, notes and copies therefrom as might be necessary to enable the relator to supply the means of examining titles to real estate in the city of New York, without resorting to the office of the register. He could not, therefore, either by himself or others, interfere to prevent persons in the employment of the relator from obtaining, by the use of the books, maps and papers of his office, the information necessary to place itself, or its own books, in this position. He had no such arbitrary control over the books, records, maps and papers of his office, as would permit that to be done. For, in making searches, all persons have been secured free access to the records and indices of the office, and it has been made the duty of the register to exhibit them to such persons. And by the additional authority conferred upon the relator it may not only make searches, but abstracts, indices, maps and copies of records. The register was accordingly in error in believing, as he seems to have done, that he could lawfully prevent persons in the employment of the relator from making such abstracts and copies of the records of his office.

The obligation imposed upon the register to permit the books, records and maps of the office to be examined is absolute in its character. And so is the additional right given by the charter to the relator. When either may be applied for in an orderly way, he is bound to acquiesce in the application and permit the examination to be made and the copies and abstracts to be taken. The duty imposed upon him in this respect is entirely ministerial, and its observance may be lawfully required through the instrumentality of the writ of *mandamus*. Over this subject he has no discretion, and where that may be the case, there "the writ is freely granted to compel the performance of strictly ministerial duties." (High on Extraordinary Remedies, § 46.) It is true, as it has been urged on behalf of the register, that the right must be clear and unquestionable to entitle it to be enforced by a writ of *mandamus*. (*People*

PEOPLE ex rel. GUARANTEE CO. v REILLY.        433

First Department, January Term, 1886

ex rel. Mott v. Board of Supervisors, 64 N. Y., 600; People ex rel. Slavin v. Wendell, 71 N. Y., 171.)

But the facts, as they have been presented by the affidavits in this case, show a clear and unquestionable right on the part of the relator to search the records of the register's office, and to make abstracts and copies of the same. Upon this subject it was held in People ex rel. Fiedler v. Mead (24 N. Y., 114, 119), that "it is one of the most usual offices of the writ of mandamus to compel executive and ministerial officers to perform official duties appertaining to their offices, where an individual has a private and a pecuniary interest in such performance." And the existence of a right of action against the officer for refusing or omitting to perform his legal duty will not prevent the issuing of the writ, especially when it would fail, as it would in this instance, to provide anything like indemnity for the denial of the right.

But while a case has been presented upon the undisputed facts made to appear by the affidavits for the writ of mandamus, it cannot be directed to be issued without observing the restrictions imposed upon the exercise of these rights vested in the relator. The register himself has been given the government, management and control of his office. The books and records contained therein are stated to exceed 4,500 in number, and they contain the records of the titles to the real estate in the city and county of New York. These records it has been made the duty of the register to preserve, protect and maintain, and in the discharge of that duty the exercise of a large degree of discretionary power and authority necessarily arises. This subject was fully considered in the late case of People ex rel. German-American Loan and Trust Company v. Richards (99 N. Y., 620), which was a similar application made by the same relator. And the decision of the Court of Appeals in the final disposition of that application maintains the power of the register to exercise a reasonable discretion in the care, management and government of his office, and the preservation of the books and records contained therein. So far as that discretionary power extends the register is entitled to exercise it according to his best judgment to secure the good order of his office and the preservation of the books and papers committed to his custody. To that extent, his powers and duties are not subject to be interfered with or controlled by

means of the writ of *mandamus.* "For wherever public officers are vested with powers of a discretionary nature as to the performance of any official duty, or in reaching a given result of official action they are required to exercise any degree of judgment, while it is proper by *mandamus* to set them in motion and to require their action upon the matters officially intrusted to their judgment and discretion, the court will in no manner interfere with the exercise of their discretion, nor attempt by *mandamus* to control or dictate the judgment to be given." (High on Extraordinary Remedies, § 43; *People ex rel. Hammond* v. *Leonard,* 74 N. Y., 443.)

The affidavit of the register shows that he has employed in the six separate rooms of his office 135 persons, and they are employed in the performance of the various duties of that office. Beyond the accommodation of these persons, the rooms also afford convenient means for persons making searches of titles and examinations of papers in the office. And the subject is necessarily committed, to a great degree, to his discretion, as to how much of the conveniences of the office are required to be preserved for the accommodation of these persons. It is not his duty to permit the office to be thronged needlessly with persons examining its books or papers, but it is his duty to regulate, govern and control his office in such a manner as to permit the statutory advantages to be enjoyed by other persons not employed by him as largely and extensively as that consistently can be done. He has no property in these books or papers, but is their mere custodian, whose duty it is securely to preserve and maintain them for the benefit, advantage and convenience of the public. And in the exercise of his discretion it should undoubtedly be done with a view to securing these ends. It cannot be made the pretense or excuse for the arbitrary exclusion of any persons from his office, whose duties require their services there. What the law expects and requires from him is the exercise of an unbiased and impartial judgment, by which all persons resorting to the office, under legal authority, and conducting themselves in an orderly manner, shall be secured their lawful rights and privileges, and that a corporation formed in the manner in which the relator has been shall be permitted to obtain all the information, either by searches, abstracts or copies, that the law has entitled it to obtain.

PEOPLE ex rel. GUARANTEE CO. v. REILLY.     435

First Department, January Term, 1886.

In the performance of these duties, by section 1742 of chapter 410 of the Laws of 1882, it has been made the duty of the register to assign one or more suitable persons in his office to have the custody of the records during office hours, in whose presence, under the direction of the register, all examinations of the records shall be made. And it appears from the affidavits that a person in his office has been assigned by him as such custodian of these records. The fact has also been shown that persons not in the employment of the relator are permitted to examine the records of the office without doing so under the observation or surveillance of his custodian. But that fact clearly will not entitle the relator, or the persons in its employment, to claim as a legal right the same degree of indulgence. If the register or the custodian of the records has not enforced the observance of the duty created by this section of the act in all cases, that omission will not entitle the relator to insist upon the same indulgence in behalf of the persons who are in its employment. For this duty has been enjoined by the statute, and the court has no authority to absolve the register from the obligation to perform it. Its authority, on the other hand, as well as its duty, is to require the observance of this and all other statutory directions. And under this provision the persons in the relator's employment, who desired to examine, search, abstract or copy the records or maps, are required to do so in the presence of this custodian, and the rights of the relator are subordinate to the observance of this obligation.

It has been suggested that the register should appoint additional custodians, if the one who has already been appointed is incapable of fully discharging all the obligations to which he has been subjected by this section of the statute. But that subject is one which is necessarily in a great measure confided to the judgment and discretion of the register himself. It is for him to determine how many persons' services will be required for the management of this part of the business of his office. And he could not be directed to make additional appointments simply to meet the exigencies which might be occasioned by an extended temporary demand, created by the services of the persons in the employment of the relator. It is the duty of the register to consider the state of the business of his office in this respect, as it may be expected from time to

436    PEOPLE ex rel. GUARANTEE CO. v. REILLY.

First Department, January Term, 1886.

time to present itself, and to provide for all the ordinary emergencies requiring this service of the person having the custody of the records. And when that has been done, and the register has fairly exercised his judgment in making his selections or appointments, the court cannot interfere and direct him to extend them, because the convenience of some particular persons or corporation may require a greater degree of attention than the appointee at the time may be able to give them.

The register has, in part, excused himself for the omission to give the persons employed by the relator the degree of attention they were entitled to receive, because of the insolent conduct of some of them towards himself, whom, he states, "asserted their intention of taking down the books without my permission, or that of my custodian." Their affidavits, in a general way, deny that they were chargeable with any incivilities about his office. But it does appear that they did insist upon a very large degree of liberty in taking down and examining the books of the office. And in the statement sent by the relator to the register, notice was given to him, which may have induced him, more readily than he otherwise would, to regard the conduct of the persons in the employment of the relator as intended and designed to be uncivil and offensive. If the persons employed to make these searches, extracts and copies were insolent to him, he had the right, on that account, to exclude them from the office; for persons who frequent public offices to make examinations and acquire information are required to conduct themselves in a civil and orderly manner. It is most probable, from the statements contained in the affidavits, that neither side was disposed to be particularly conciliatory towards the other. But while that did not forfeit the right of the relator to make the abstracts and copies designed to be made for it, it still forms an excuse by way of palliation for the conduct of the register and the persons in his employment. And that excuse should be so far allowed to be operative in the case as to relieve him from the imposition of the costs of this appeal, or of the application which was made, especially as the special power given to the relator by its charter does not seem to have been brought to his attention. But the order from which the appeal has been taken should be reversed, and an order should be entered

directing a writ of peremptory *mandamus* to be issued, requiring the register to allow the records, maps and papers of his office to be examined by persons employed by the relator for that purpose, and to permit extracts and copies of the same to be made, and to allow that to be done by such a number of persons, so employed, as in the exercise of his unbiased judgment and discretion can be permitted at the same time to pursue their researches in the office without depriving other persons equally entitled to make searches of titles, of the convenient opportunity for doing so, and under the restriction created and imposed by section 1742 of chapter 410 of the Laws of 1882. The order from which the appeal has been taken should be reversed, without costs, and an order made to this effect in the proceedings.

DAVIS, P. J., and BRADY, J., concurred.

BRADY, J.:

The effect of the acts which relate to the relator's incorporation and acts kindred to the subject, to which Justice DANIELS refers in his elaborate and learned opinion, is to create another register's office in the city of New York, and the relator is allowed to avail itself of all the advantages accruing from the expenditures of the municipality in getting together and in preserving the records affecting the titles to lands in the city of New York. The employment of a number of persons to make transcripts from the records which will enable the relator to make the necessary examination of a title in its own office would necessarily, unless restricted by some rigorous rule, very much interfere with the examination of titles in the register's office by persons employed for the purpose, particularly the clerks and the members of the bar who are generally engaged in the pursuit of information with regard to one or more pieces of property to which their attention either officially or professionally has been especially called. The acts referred to, however, are so comprehensive in character that the privileges secured to it cannot be interfered with or controlled except in the manner indicated in the opinion of Justice DANIELS. The exercise of the powers, however, conferred upon the relator should be entirely subject to the responsibilities and duties assumed by the register upon taking the oath of office, and, therefore, under regulations established by

him, reasonable in character, but always with a view to the rights of others to examine the records in such way that they should not be interfered with or delayed. It may be that the incorporation of the company was wise and may ultimately benefit purchasers of real estate, but it is quite evident that it must seriously affect the revenue derived from the office of register if the company be successful and rely in its transactions upon the examinations made in its office without resorting to the official search which in the profession is generally considered to be indispensable. With that result we, it is true, have nothing to do; but it is our duty so to control the relator in the exercise of its large powers as to prevent any undue interference with the rights of others and of the register and his subordinates, as well as the preservation of the records from mutilation or defacement by careless or unskilled persons.

For these reasons, I concur with Mr. Justice DANIELS in the opinion delivered upon the proceedings for a *mandamus.*

Order denying motion for *mandamus* reversed, without costs, and order entered as directed in opinion.