In the Matter of the Application of JOHN J. EGAN, Respondent, for a Peremptory Writ of Mandamus against THE BOARD OF WATER SUPPLY OF THE CITY OF NEW YORK et al., Appellants.

Municipal corporations — inspection of books and papers of municipality — New York (city of) — mandamus — when writ will be issued commanding board of commissioners of water supply to permit taxpayer to inspect reports of experts relating to the awarding of contracts for work to be done.

1. The right to inspect books and papers filed with an officer, board or commission acting on behalf of a county, town or other municipality, which is given by the General Municipal Law (Cons. Laws, ch. 24, § 51), is as broad as the language used to bestow it and there is no limitation thereof save that found in the provision itself — making the examination subject to reasonable regulations — or in special statutes relative to the public documents in particular departments.

2. A writ of mandamus will lie to compel the commissioners of water supply of the city of New York to afford a taxpayer in that city an opportunity to inspect reports of engineers relating to the passing upon and awarding a contract under the provisions of chapter 724 of the Laws of 1905, which act authorizes the board to "select the bid or proposal the acceptance of which will in their judgment best secure the efficient performance of the work" when such contract has been awarded to another than the lowest bidder, although the petitioner does not allege that he has suffered special injury or that he contemplates bringing a taxpayer's action. (*Matter of Lord*, 167 N. Y. 398; *People ex rel. Woodill* v. *Fosdick*, 141 App. Div. 450, distinguished.)

3. A person who sends a communication to a public officer relative to public business cannot make his communication private and confidential simply by labeling it as such.

*Matter of Egan* v. *Bd. of Water Supply*, 148 App. Div. 177, affirmed.

(Argued February 14, 1912; decided April 2, 1912.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 29, 1911, which affirmed an order of Special Term granting a motion for a peremptory writ of mandamus to compel defendant to permit an inspection of the reports of the chief and consulting engineers of the board of water supply of the city of New York in relation to the award of a certain contract.

The facts, so far as material, are stated in the opinion.

*Archibald R. Watson*, Corporation Counsel (*Terence Farley* of counsel), for appellants. Under section 51 of the General Municipal Law a taxpayer who seeks an inspection of a public record is bound to show that he has some "direct and tangible" interest in it. (*People ex rel. Henry* v. *Cornell*, 35 How. Pr. 31; *Matter of Lord*, 59 App. Div. 591; *People ex rel. Woodill* v. *Fosdick*, 141 App. Div. 450; *Brewer* v. *Watson*, 71 Ala. 299; *Phelan* v. *State*, 76 Ala. 49; *Randolph* v. *State*, 82 Ala. 527; *State ex rel. Colescott* v. *King*, 154 Ind. 621; *Cormack* v. *Wolcott*, 37 Kans. 391; *People ex rel. Bishop* v. *Walker*, 9 Mich. 328; *Lurn* v. *McCurly*, 39 N. J. L. 287.) Public

policy and sound business principles dictate that the representative of a defeated bidder should not be permitted to inspect the confidential communications and financial reports received by the defendant concerning the ability of the bidders to perform the proposed work.  (*Matter of Allen,* 131 N. Y. Supp. 1027; *People ex rel. Woodill* v. *Fosdick,* 141 App. Div. 450.)

*Alton B. Parker* and *Theodore Megaarden* for respondent.  The petitioner is entitled to an inspection of the documents mentioned because of his status as a citizen and taxpayer of the city of New York.  (*Doolittle* v. *Broome County,* 18 N. Y. 155; *Kilbourne* v. *St. John,* 59 N. Y. 21; *Guest* v. *City of Brooklyn,* 69 N. Y. 21; *Rex* v. *Justices,* 6 Ad. & El. 84; *Ferry* v. *Williams,* 41 N. J. L. 332; *Clement* v. *Graham,* 78 Vt. 290; *Com. ex rel. Biddle* v. *Walton,* 6 Penn. D. R. 287; *Matter of N. Y. & B. Bridge,* 72 N. Y. 527; *Matter of Village of Middletown,* 82 N. Y. 196; *Everett* v. *Wells,* 2 Scott N. R. 531.)  The engineers' reports which the petitioner seeks to inspect are public documents within the meaning of section 51 of the General Municipal Law.  (*People* v. *Coleman,* 121 N. Y. 542; *Drake* v. *State,* 144 N. Y. 414; *Matter of City of New York,* 57 Misc. Rep. 52; *Tonnele* v. *Hall,* 4 N. Y. 140; *Weed* v. *Tucker,* 19 N. Y. 422; *People* v. *N. Y., etc., R. Co.,* 84 N. Y. 565; *People* v. *Spicer,* 99 N. Y. 225; *People* v. *Sturges,* 156 N. Y. 580; *Collins* v. *Drew,* 67 N. Y. 149.)

WILLARD BARTLETT, J.  The original order brought up for review by this appeal directs the issuance of a peremptory writ of mandamus commanding the commissioners of water supply of the city of New York to afford the petitioner an opportunity to inspect any and all reports of the chief and consulting engineers to the board of water supply on or relating to the passing upon and awarding by the said board of a contract known as con-

# 150 MATTER OF EGAN.

tract 90 for the construction of a tunnel under the Hudson river between Storm King and Break Neck mountains and two shafts in connection therewith.

The appellants constitute the board of water supply, a board or commission of public officers acting for and in behalf of the city of New York to acquire an additional supply of pure and wholesome water for the inhabitants of the municipality. (Laws of 1905, ch. 724.) In the discharge of their duties under the statute cited, they determined that a tunnel for aqueduct purposes should be constructed under the Hudson river opposite Storm King; and they duly advertised for sealed bids or proposals for doing the work, receivable up to May 23, 1911, in accordance with plans and specifications and under a form of contract previously prepared and approved. Four bids were received, as follows, the figures in each instance representing the aggregate for doing the entire work:

| | |
|---|---|
| Anthony C. Douglass | $1,432,000 |
| Winston & Co. and Breuchaud | 1,483,936 |
| The T. A. Gillespie Company | 1,648,000 |
| McArthur Bros. Co. | 1,755,168 |

The contract was awarded to the T. A. Gillespie Company, instead of to the lowest bidder, under a provision of the statute which authorizes the board to "select the bid or proposal, the acceptance of which will in their judgment, best secure the efficient performance of the work." (Laws of 1905, ch. 724, § 29.) In their report, passing upon the bids, the commissioners of water supply declare that all the bidders are experienced men; that all the evidence goes to show that the low bidder, Mr. Anthony C. Douglass, is a man of high reputation and integrity, courageous and resourceful, who has done difficult tunneling and shaft work requiring the handling of considerable volumes of water in connection with the power developments at Niagara Falls; but the commissioners "hesitate to make an

award of this important contract to him because there are many important differences between the work he has done and the work under Contract 90, which is unusually exacting; because he has had no experience in carrying out work let by competitive bidding on large public contracts; and particularly because he has not done any contracting work for about five years, and consequently has not at hand the necessary facilities and organization which this contract expressly calls for." As to the second bidders, Winston and Company and Breuchaud, who are characterized as clever, reliable, experienced and resourceful, it appears from the report that they were already doing excellent work in connection with the Ashokan dam and the Catskill aqueduct, and the commissioners, therefore, deemed it unwise to concentrate all the links in the chain of construction in the hands of one contractor. "The Board," we are told, "has come to the reluctant conclusion that the interests of the City will not be best served by the award of this contract to them." The third bidders, The T. A. Gillespie Company, were finally preferred because they "have nearly completed for this Board a work involving the same problems and of an exactly similar character, and have at hand an organization trained for this particular class of work." The commissioners had further satisfied themselves as to the financial standing, knowledge, experience and ability of said company.

Upon ascertaining these facts, the petitioner, a resident and taxpayer in the city of New York, desired to see the written evidence upon which the commissioners of water supply had acted in awarding contract 90 to a contractor whose bid was $217,000 higher than the lowest bid and $165,000 higher than the next to the lowest. His request for permission to inspect the reports of the engineers relating to the award of the contract, and all minutes, entries, books and other papers in reference thereto was denied by the secretary of the board, under

# 152 MATTER OF EGAN.

instructions from the commissioners, and the present proceeding was thereupon instituted.

The petitioner's assertion of his right to inspect the papers in question is based upon section 51 of the General Municipal Law (Cons. Laws, ch. 24), which provides as follows:

"All books of minutes, entry or account, and the books, bills, vouchers, checks, contracts or other papers connected with or used or filed in the office of, or with any officer, board or commission acting for or on behalf of any county, town, village or municipal corporation of this state are hereby declared to be public records, and shall be open, subject to reasonable regulations to be prescribed by the officer having the custody thereof, to the inspection of any taxpayer." The petitioner does not allege that he has sustained any special injury in person or property, or that he contemplates bringing a taxpayer's action under the statutes authorizing suits by taxpayers in the public interest; he simply insists that the legislature, by the enactment quoted, has conferred upon him a right or privilege which the commissioners of water supply cannot lawfully withhold.

The appellants, on the other hand, contend that under section 51 of the General Municipal Law a taxpayer who seeks an inspection of a public record is bound to show that he has some direct and tangible interest in it; that the reports sought to be inspected here are not public records, but private confidential communications; and that public policy forbids the inspection of such communications, in a case like this, at the instance of an unsuccessful bidder for a public contract. The learned judges who dissented in the Appellate Division were of the opinion that the engineers' reports did not fall within the purview of the statute upon which the petitioner relies; and the appellants also argue that point here.

At common law the magistrates of a county were not compellable by mandamus to grant to ratepayers gener-

ally an inspection of the bills of charges of county officers. (*King* v. *Justices of Staffordshire*, 6 Adolphus & Ellis, 84, 96.) It was conceded that the appellants might have a rational curiosity to gratify by the inspection, but there was not "that direct and tangible interest which is necessary to bring them within the rule on which the court acts in granting inspection of public documents." The language of the opinion of Lord DENMAN in the case cited, however, makes it clear that it was only by reason of the lack of sufficient interest on the part of the ratepayers that the mandamus was refused, for he says: "We are by no means disposed to narrow our own authority to enforce by mandamus the production of every document of a public nature in which anyone of the King's subjects can prove himself interested. For such persons, indeed, every officer appointed by law to keep records ought to deem himself for that purpose a trustee. But the difficulty is to see that the present applicants have any such interest as brings them within the rule." The English common-law cases on this subject, many of which were reviewed by the New Jersey Supreme Court in *State ex rel. Ferry* v. *Williams* (41 N. J. Law, 332), are somewhat conflicting, but the prevailing view seems to have been that an inspection of public documents could be had by a private subject only where the applicant showed some legal interest to be subserved by the desired inspection. A private subject could not prosecute a civil action to redress wrongs growing out of the misconduct of public officers; the civil remedy for such wrongs was usually a suit in the name of the attorney-general; and, as is pointed out in the New Jersey case cited, this accounts for the rarity of the English cases in which private litigants have succeeded in obtaining inspection of public documents as representatives of a common or public right. In New Jersey the English rule has not been observed, and from an early period the courts in that state "have exercised a large discretion in annulling the

illegal acts of municipal bodies and officers and compelling the performance of their public duties at the instance of citizens and taxpayers who were not otherwise interested in the controversy than was the rest of the community." Accordingly it was held, notwithstanding the absence of any legislative enactment conferring such right, that a citizen of a town was entitled to an inspection of the letters of recommendation filed with the collector of taxes as a basis for the issue of pending liquor licenses in order that he might ascertain whether the provisions of the municipal charter in regard to licensing saloons were being observed by the authorities. (*State ex rel. Ferry* v. *Williams, supra.*)

Another leading case is *Clement* v. *Graham* (78 Vt. 290, 315), which was a complaint for mandamus to the state auditor of accounts commanding him to exhibit the vouchers on file in his office to the relator, his agent or attorney. The relator had no particular right or interest to be protected by the desired inspection save that which he had in common with all other citizens and taxpayers; he merely avowed the belief that there had been gross negligence and misconduct in the management of the moneys of the state which would be explained by an examination of the vouchers on file in the auditor's office, and stated his purpose to be the bringing about of reforms which would reduce the expenses of government to the proper amounts and thus save large sums of money to the people. The Supreme Court of Vermont held that this interest sufficed to enable the relator to maintain the proceeding for an inspection of the documents in question, saying: "We think it may safely be said that at common law, when not detrimental to the public interest, the right to inspect public records and public documents exists with all persons who have a sufficient interest in the subject-matter thereof to answer the requirements of the law governing that question."

Many other cases might be cited bearing upon the com-

mon-law rule as to a citizen's right to inspect public
records; but the decisions I have mentioned suffice to
show what the condition of the law was when the legis-
lature of this state began to enact the series of statutes
conferring upon taxpayers, merely as such, the right to
maintain actions to prevent waste on the part of public
officers. The first of these statutes was chapter 161 of
the Laws of 1872, entitled "An Act for the protection
of taxpayers against the frauds, embezzlements and
wrongful acts of public officers and agents." This was
amended by chapter 526 of the Laws of 1879 and chap-
ter 435 of the Laws of 1880. The prior legislation on the
subject was replaced by chapter 531 of the Laws of 1881,
entitled "An Act for the protection of taxpayers." This
statute not only continued the right bestowed upon tax-
payers by the earlier acts of the legislature but for the
first time conferred upon them in express terms the right
to inspect public documents — and in the very words now
found in section 51 of General Municipal Law quoted
above. The general provisions for the maintenance of
an action by a taxpayer to prevent waste of or injury to
the property of a municipal corporation are now con-
tained partly therein and partly in section 1925 of the
Code of Civil Procedure.

The change thus effected in the status of a taxpayer
manifestly gave him an interest in respect to the contents
of any public document which would be serviceable to
him in the prosecution of such a suit as the new legisla-
tion authorized him to bring. The appellants contend,
however, that the papers sought to be inspected in this
proceeding cannot be utilized for any such purpose
because the commissioners of water supply are not sub-
ject to restraint at the suit of a taxpayer, and, further-
more, the petitioner has not avowed any intention of
bringing a suit against them. They insist, in brief, that
the right to an inspection is dependent upon the right to
maintain a taxpayer's action, and that the latter right

# 156    MATTER OF EGAN.

does not exist against these appellants in view of the terms of the statute under which they acted in awarding the contract to one of the higher bidders.

We can find no warrant for implying any such limitation as this into the plain language of section 51 of the General Municipal Law. All books of minutes and other public records therein mentioned are to be open to the inspection of *any* taxpayer — not merely such a taxpayer as may contemplate bringing a taxpayer's suit. The statute in which the provision first appeared (Laws of 1881, chap. 531) was entitled an act for the protection of taxpayers — which protection could well be afforded to a great extent by the requirement of publicity in official transactions as well as by enabling taxpayers to sue in the public interest. We think that the right intended to be conferred is as broad as the language used to bestow it and that there is no limitation thereof save that found in the provision itself — making the examination subject to reasonable regulations — or in special statutes relative to the public documents in particular departments, such as the board of health in the city of New York. (Greater New York Charter, § 1175.)

The decision of this court in *Matter of Lord* (167 N. Y. 398) might be deemed to conflict with this view if the statute there relied upon by the petitioner had been the same, but it was not. In that case the claim was based solely on certain provisions in the Greater New York charter; here it rests on a provision of the General Municipal Law. Nor does the case of *People ex rel. Woodill* v. *Fosdick* (141 App. Div. 450) aid the appellants, for it merely holds, so far as section 51 of the General Municipal Law is concerned, that stenographic minutes of evidence taken before a commissioner of accounts are not included among the papers which that section declares to be public records.

The declaration which I have quoted from the opinion of Lord DENMAN in the case of *Justices of Staffordshire*

(*supra*) to the effect that for all persons interested "every officer appointed by law to keep records ought to deem himself for that purpose a trustee," seems to me peculiarly applicable here. This is not an attempted inquisition into the business affairs of a private corporation. It is an inquiry into the manner in which the public business has been done — an endeavor to ascertain on what grounds and for what reasons a body of public officers charged with the duty of awarding a contract for a vast public engineering work have departed from the ordinary and usual practice of awarding the contract to the lowest responsible bidder, and have thus imposed upon the people a heavier pecuniary burden than was necessary. Instead of resisting a request for light the commissioners might rather be expected to welcome an opportunity to justify their action; for justification is always appropriate wherever a contract is awarded otherwise than to the lowest responsible bidder. Such an award instantly and inevitably suggests the question why was preference thus given; and it can be answered fully only by a disclosure of all the documents which were the basis of action.

But it is said that the papers sought to be inspected are private and confidential, and hence do not fall within the purview of the statute. As to this argument it is to be observed in the first place that a person who sends a communication to a public officer relative to the public business cannot make his communication private and confidential simply by labeling it as such. The law determines its character — not the will of the sender. It may not be denied that there are papers concerning governmental matters which are properly treated as secret and confidential, such for example as diplomatic correspondence and letters and despatches in the detective police service or otherwise relating to the apprehension and prosecution of criminals; but there is no such feature in the present case. It is true that a disclosure of the objections which led the commissioners of water supply to reject the offer

of the lowest bidder on contract 90 may restrain objectors from writing thus freely to similar boards in the future; but if such is a consequence of complying with the plain command of a statute it must be endured. A critic who is trying to induce a body of public officers to depart from the customary rule in awarding a public contract ought not to be unwilling that his reasons should be made known — whatever the consequences to himself.

The order appealed from was right and should be affirmed, with costs.

CULLEN, Ch. J., HAIGHT, VANN, WERNER, HISCOCK and CHASE, JJ., concur.

Order affirmed.