In the Matter of the Application of MARIA STENSTROM, as Administratrix of the Goods, Chattels and Credits of EDWARD S. STENSTROM, Deceased, Petitioner, for a Peremptory Order of Mandamus against CHARLES A. HARNETT, Commissioner of the Bureau of Motor Vehicles of the State of New York, Respondent.

Supreme Court, Albany County, November —, 1927.

**Motor vehicles — reports of accidents filed under Highway Law, §§ 299-a, 299-c — representative of person killed in automobile accident, who has brought action, may inspect reports filed — Commissioner of Motor Vehicles must furnish transcript on payment of fees — peremptory order of mandamus granted.**

The petitioner, the administratrix of a person who was killed in an automobile accident, having brought an action to recover damages for the death of her intestate, is entitled to examine the reports of the accident filed in the Motor Vehicle Bureau, pursuant to sections 299-a and 299-c of the Highway Law, and the Commissioner of Motor Vehicles must furnish her with a transcript of those reports upon the payment of the proper fees.

Accordingly, the application for a peremptory mandamus order commanding the Commissioner of Motor Vehicles to permit the petitioner or a duly authorized attorney to inspect the reports and to furnish her or her attorney with a transcript thereof upon the payment of fees, is granted.

APPLICATION for a peremptory order of mandamus.

Supreme Court, November, 1927.                [Vol. 131

*Thomas J. O' Neill [Charles D. Lewis* of counsel], for the petitioner.

*Albert Ottinger, Attorney-General [John H. Machan* of counsel], for the respondent.

STALEY, J. This is an application for a peremptory order of mandamus directing the Commissioner of the Bureau of Motor Vehicles to furnish the petitioner with copies of accident reports referring to a collision of motor vehicles.

The reports in question relate to an accident in which petitioner's intestate met his death. The petitioner, as administratrix, has commenced an action to recover damages for the death of her intestate, and this action is now pending undetermined.

The petitioner requested copies of the reports, but the Commissioner refused to furnish them on the ground that they were treated as confidential and were filed solely for the use of the Commissioner in preparing statistics and ascertaining the causes of accidents and providing information to enable the Motor Vehicle Department to control the accident problem.

The petitioner claims that the reports in question are necessary to enable her to prepare for trial, and that she is ready and willing to pay the proper fees for certified copies.

The sole question presented here is the right of the petitioner to inspect or obtain copies of the reports.

Sections 299-a and 299-c of the Highway Law (added by Laws of 1924, chap. 360) require persons involved in automobile accidents to report the matter in writing to the Commissioner of Motor Vehicles. Such reports shall be upon forms prepared by the Commissioner and contain such information as he shall prescribe. Failure to report an accident is a misdemeanor, and constitutes ground for the suspension or revocation of the license or certificate of registration of the person failing to report.

The immediate purpose of the report is not disclosed by the statute. No doubt the purposes to be served by reports of accidents are those stated by the Commissioner in his letter denying petitioner copies of the reports in question. They also may be used as sources of information by the Commissioner in the consideration of applications to renew an operator's license, or in suspending or revoking such license or a certificate of registration. (Highway Law, §§ 289, 290-a.)

The Commissioner of the Bureau of Motor Vehicles claims that accident reports are not public records, but are of a confidential nature not subject to inspection by the public generally or by persons who have a substantial interest in their contents.

A public record, strictly speaking, is one made by a public officer

in pursuance of a duty, the immediate purpose of which is to disseminate information to the public, or to serve as a memorial of official transactions for public reference. (*Evanston* v. *Gunn,* 99 U. S. 660; *Sturla* v. *Freccia,* L. R. 5 App. Cas. [H. L.] 623.)

It is not every document on file with a public officer or every memorandum made by a public officer that is a public document. Reports of private individuals to government officials even pursuant to statute, correspondence of such officials in matters relating to private affairs of a citizen although in connection with public business, memoranda of public officers for their own convenience, are not public documents or records, unless made so by statute. (*American Dist. Telegraph Co.* v. *Woodbury,* 127 App. Div. 455.)

In the case of public records, strictly speaking, all citizens have a right to resort to them, irrespective of their motives or interest. They may examine them to satisfy mere curiosity, or they may take transcripts from them for sale. (*People ex rel. German-American Loan & Trust Co.* v. *Richards,* 99 N. Y. 620.)

Whether or not records are strictly public records is often expressly declared by statute. In the absence of statute the nature and purpose of the record, and, possibly, custom and usage, must be the guides in determining the class to which it belongs. (*Evanston* v. *Gunn,* 99 U. S. 660.)

As to records and documents not strictly public records, but relating to public business, I do not think there is a right of inspection on the part of all citizens. Such a right would lead to inconvenience in the transaction of public business, and would ofttimes result in serious consequences to citizens and private business.

It would be a startling proposition to public officers and to the public as well, if they were informed that all citizens had the right, in the absence of statute to the contrary, to search the files and records of all public officers, as it might suit their fancy.

I take the rule to be in relation to such records and documents, although on file with a public officer pursuant to statute, that they ought not to be indiscriminately subject to inspection. However, any person who has an interest in such record or document should ordinarily be permitted to inspect it, unless its inspection would obviously be detrimental to public interest.

The difficulty is to determine what constitutes a sufficient interest or an untimely and improper circumstance for inspection.

In the majority of cases, in this State, where the right of inspection was involved the controversy was determined by permitting inspection when and in the manner permitted by statute. (*Matter of Egan,* 205 N. Y. 147; *Matter of Allen,* 148 App. Div. 26; *Matter of Lord,* 167 N. Y. 398.)

In *People ex rel. Woodill* v. *Fosdick* (141 App. Div. 450) an application to inspect minutes taken during an investigation by the commissioner of accounts of the city of New York was made by a taxpayer. The application was granted at Special Term pursuant to section 51 of the General Municipal Law. The Appellate Division, however, reversed the order granting the application on the ground that the statute did not apply and that a mere taxpayer could not compel the commissioner, as a matter of strict right, to disclose evidence elicited during an investigation, at least while the investigation was pending. In that case an inspection was denied, on the ground of the then present detriment to the government, although, apart from this, the taxpayer was expressly conceded to have some interest in the record.

A person has an interest in a record or document filed pursuant to statute, although not strictly public, sufficient to entitle him to an inspection, if it may be the basis of some official action or proceeding directly affecting him or have a direct bearing upon his substantial rights.

Secrets of State, such as diplomatic correspondence, records of the police, communications by voluntary informers, may be withheld from inspection even where a person directly interested is concerned. (*Matter of Egan*, 205 N. Y. 147; *Worthington* v. *Scribner*, 109 Mass. 487, and cases cited.)

In the case at bar the reports in question place in the hands of the Commissioner of Motor Vehicles information which may be the basis of proceedings to revoke an operator's license or a certificate of registration. (Highway Law, § 290-a.) It places in the files of a public officer a record which directly concerns not only the State and the parties making it, but which may concern the rights of a third person not a party to it. Such third party so concerned has a sufficient interest to be entitled to an inspection.

The operation of motor vehicles upon the public streets and highways has become a great menace to the safety and security of human life. The calendars of the courts are crowded with cases to enforce rights and redress wrongs arising from accidents caused by use of these high-power, high-speed, vehicles. The need is ever present to conceive and adopt remedies to lessen accidents and to promote the safety and security of users of the public highways.

The Motor Vehicle Bureau and the laws enacted for its administration are evidence of the recognition by the State of the great need for strict regulation and through them undoubtedly have come beneficial results.

Civil liability, predicated upon negligent operation, and its enforcement is likewise a deterrent against reckless and careless

operation and to that end the bureau by use of the data filed with it may be a potent agency, as it helps or antagonizes legitimate efforts to establish responsibility. The purpose for which this bureau was created can be best served by its disclosure of truth rather than by its concealment of it.

The use of these reports for the discipline of incompetent or reckless operators and for the purpose of analysis and preparation of statistics is undoubtedly a worthy one, but such limited use is not fully effective in fixing liability for the accidents and is negligible in its contribution to transmute wrongs into just compensation for those who suffer from them.

The inspection of these accident reports by persons having a proper interest therein, in my judgment, would promote the public interest and not be detrimental to it.

It is claimed that, if an inspection is permitted and the record is used as an admission, the party making the report is compelled to be a witness against himself and his answers might tend to expose him to a criminal prosecution.

This proceeding does not require decision as to whether the statute in question violates any privilege of the party making the report nor a determination as to what legal uses may be made of a copy of such report in the hands of a person interested therein. We may well assume that the use permitted will be a proper one and not violative of the constitutional rights of any citizen. This proceeding is confined to the sole question of the right of interested persons to inspect such reports as have been filed.

Public officers within the State have the statutory duty upon request and upon payment of the proper fees therefor, to make transcripts of public records and to certify to the correctness thereof. (Public Officers Law, § 66.) The respondent contends that a serious administrative problem will be presented if inspection of these reports is permitted or transcripts therefrom directed to be furnished, and that the Bureau of Motor Vehicles will become a general source of information in all negligence cases arising from automobile collisions and that its work will be greatly hampered by the interference of the activities which will follow the establishment of such privilege.

Public offices exist for public service and such contention is to quarrel with our system of government and the laws which impose duties and obligations upon public officers.

I do not hold that these reports are open generally for inspection to the public, but only to such persons who establish a proper interest therein, and the bureau can undoubtedly formulate a procedure by which each applicant for inspection will be required

to prove his interest and right of inspection, and that permitted in proper cases only under reasonable regulation and control.

A peremptory order of mandamus may issue commanding the Commissioner of Motor Vehicles to permit the petitioner or her duly authorized attorney to inspect the reports of the accident in question, and to furnish the petitioner or her duly authorized attorney a transcript thereof on payment of the fees allowed by law and pursuant to such reasonable regulations as may be prescribed by the Commissioner, with fifty dollars costs.