In the Matter of SEARS ROEBUCK & COMPANY, Petitioner, against CHESTER P. HOYT, as City Assessor of the City of Watertown, Respondent.

Supreme Court, Special Term, Jefferson County, August 21, 1951.

*Schwerzmann & Schwerzmann* for petitioner.

*Kenneth W. Brett, Corporation Counsel (Claude H. Dunk* of counsel), for respondent.

SEARL, J. This proceeding is brought for mandamus (Civ. Prac. Act, art. 78) to compel the sole assessor of. the City of Watertown to permit petitioner to inspect and make copies of:

1. Kardex records covering some 9,000 parcels of real estate located within the city of Watertown from 1940 to date, the Kardex records having been made by the respondent as well as his associate assessor, Sanford G. Humphrey, who retired on January 1st, 1950.

2. Inspection of written applications for assessment changes made before the board of review of the City of Watertown and the minutes and proceedings of the board of review in connection therewith, and the decisions of the board of review in each instance.

In the answer to the petition the respondent admits that petitioner has the right to inspect the minutes and proceedings of the board of review aforesaid, as well as the decisions of the board in each instance.

At a hearing held pursuant to stipulation in the city of Syracuse on the 30th day of November, 1950, petitioner moved pursuant to the provisions of section 1293 of the Civil Practice Act to strike out certain defenses of new matter contained in the answer on the ground that such defenses are insufficient in law upon the face thereof.

Some time prior to 1940, the two assessors of the City of Watertown worked out a certain Kardex system to be installed by and at the expense of the city, and to be used by the two assessors then in office, as to each improved parcel of real property located in the city. Each card, approximately nine by seven inches (comprising the Kardex System), contains many printed items for insertion of the name of the owner, selling price of the property, mortgage, if any, frontage, unit price, front foot value, details as to the main building, including type, construction, exterior, floors, heating, foundation, basement, roofing, interior finish, lighting, in all, some eighty subdivisions, date when built or when remodeled, as well as details as to any minor buildings. From date of installation of the Kardex system to the present time, it is admitted that the assessors placed thereon such information as they were able to obtain, either from the owners or from others.

The city also provided certain blanks which might be filled out on application for revision of a real property assessment, upon which the applicant might set forth such data as was deemed material in an application to review. These applications were printed in a manner so as to contain an affidavit to the effect that the statements contained in the application for revision were true.

In the instant proceeding the petitioner, Sears Roebuck & Co., seeks to reduce an assessment of $651,500 because of inequality, and has instituted a proceeding for the reduction of such assessment. Paragraph 10 of the respondent's answer, in opposing the instant application to inspect the Kardex records and applications for revision, alleges that the information contained in the system and on the applications was obtained upon the express condition that such information was confidential and would not be revealed by him or his coassessor to any other property owner, his attorney, agent, representative or employee, except the person furnishing such information.

This separate defense, interposed by respondent, must, as a matter of law, upon motion made by petitioner, be stricken out. Decisions are in accord to the effect that records and papers in all municipal departments, with the exception of the police and

law, are open to inspection by a taxpayer. This rule extends even to communications made to the defendant by a third party. The court, in *Matter of Ihrig* v. *Williams* (181 App. Div. 865, 868, affd. 223 N. Y. 670) definitely holds that there are and should be no confidential records or communications with respect to public business, citing *Matter of Egan* v. *Board of Water Supply* (148 App. Div. 177, affd. 205 N. Y. 147).

In *Matter of Egan* v. *Board of Water Supply* (*supra*) it was claimed that reports of the chief and consulting engineers, made to the board of water supply and on file with the board, were secret and confidential papers. However, the court ruled that such reports were still official papers made by one public officer to his superior. In the instant proceeding information given by a taxpayer to the assessor in confidence, with the assurance by the latter that such information would not be disclosed, might be held in confidence if locked up only in the memory of the assessor. If the assessor chose to record the information on the Kardex System, as a part of the record in the office, then such assurance of secrecy would afford neither the assessor nor the city any protection against disclosure where application is made by a taxpayer for the inspection. Once the information was transcribed in durable form on the city records it henceforth became available.

As the court has said in *Matter of Becker* v. *Lunn* (200 App. Div. 178, 181), the information upon the records bears some relation to the official capacity of the person who made them. Defendant Lunn was not permitted to characterize the records in his office as private records. The court there stated that the policy of the law favors publicity, that the statute proceeds upon the theory " that there are or should be no confidential records in respect to public business."

Should this court, in the instant proceeding, throw the cloak of protection against inspection by a taxpayer seeking to prove inequality in assessment, the same ruling must necessarily and logically follow as to information and cards on file made by previous assessors at the time the application is made.

The argument of the respondent might bear more weight if the cards in question pertained to assessments on personal property where the net worth of a taxpayer was likely to be revealed to all who sought to know what his neighbor was worth. In the instant case apparently the only information of a confidential nature transcribed upon the cards, or applications for review, would be the business conditions and operations relative to the particular parcel of real estate involved, the building cost, and rentals received from the building.

The next question to decide is whether the cards and records comprising the Kardex System, and the applications made by various taxpayers for revision of real estate assessments, come within the scope and purview of the definition of public records, as contained in section 51 of the General Municipal Law. The pertinent portion of the section reads as follows: '' All books of minutes, entry or account, and the books, bills, vouchers, checks, contracts or other papers connected with or used or filed in the office of, or with any officer, board or commission acting for or on behalf of any county, town, village or municipal corporation in this state are hereby declared to be public records, and shall be open, subject to reasonable regulations to be prescribed by the officer having the custody thereof, to the inspection of any taxpayer.''

It is admitted that the safe in which these records are kept is one owned by the City of Watertown in the office of respondent; that such office is in a public building owned by the city; that the respondent and his former associate assessor were employees of the city; that any notations made upon the cards comprising the Kardex System were made while the assessors, so paid by the city, were acting in their official capacity.

In view of the above, it cannot reasonably be urged that either the applications or Kardex cards are not '' other papers connected with or used or filed in the office of, or with any officer, board or commission acting for or on behalf '' of the city.

Section 35 of the Watertown City Charter (L. 1923, ch. 660 as amd.) provides as follows: '' except as herein otherwise provided, the city assessors shall have as to the city all the powers, and perform all the duties, conferred and imposed upon town assessors by provision of law of the state relating to taxes and assessments.''

Section 33 of the Town Law, entitled *Powers and duties of assessors,* provides: '' The assessor or assessors shall have such powers and shall perform such duties as are, or hereafter may be, conferred or imposed by law.''

Section 27 of the Tax Law requires that assessors hear and determine complaints; that complainants shall file with the assessors a statement, '' under oath, specifying the respect in which the assessment complained of is incorrect ''. Assessors are authorized to administer oaths, take testimony and hear proofs. They may require the person assessed, or any other person, to appear and be examined, and to produce any papers relating to such assessment. Then follows a provision that if any such person shall willfully refuse to attend or to answer any

material question, such person shall not be entitled to any reduction of the assessment. Singularly the substance of this last-stated provision in the law, as well as a copy of section 2321 of the Penal Law referring to making false statements as constituting a misdemeanor, are printed on the application blanks asking for revision. These applications, sworn to by applicants, respondent refuses to exhibit to the petitioner. That such documents comprise " other papers " connected with or used or filed in the office of, or with the assessor, and are within the scope and perview of public records, as referred to in section 51 of the General Municipal Law, can hardly be questioned.

Next in order is the question as to whether petitioner is entitled to take excerpts from the cards kept in a safe in the office of respondent, termed the Kardex System. Petitioner having instituted a certiorari proceeding, now asks to examine the cards, not because of curiosity, nor to ascertain whether or not a claim can be made based upon inequality of assessment, but for the purpose of proving inequality. This burden rests upon petitioner.

As a prelude to citing New York State authorities, it is appropriate to quote from Justice HOLMES (*Ex Parte Uppercu,* 239 U. S. 435, 440) : " The necessities of litigation and the requirements of justice found a new right of a wholly different kind. So long as the object physically exists, anyone needing it as evidence at a trial has a right to call for it, unless some exception is shown to the general rule."

Exceptions to the general rule are those where the public health or safety is concerned. For instance, in *Matter of Allen* (148 App. Div. 26, affd. 205 N. Y. 158) the court refused an order for examination of papers in the health department of the City of New York where the charter granted discretion upon the board as to publicity of its papers and files. Likewise the records of the police and law departments are excluded for obvious reasons. (*Matter of Ihrig* v. *Williams,* 181 App. Div. 865, affd. 223 N. Y. 670, *supra; Matter of Ziegler,* 122 Misc. 351.) One readily appreciates why the filed reports of automobile accidents made by State troopers are subject to subpœna, while confidential reports made by one State trooper to his superior are not so subject. As section 51 of the General Municipal Law is remedial, the courts have held that its provisions should be liberally construed for the protection of taxpayers. (See *Holton* v. *Board of Supervisors of Monroe Co.,* 245 App. Div. 144, and cases therein cited.)

That the statutory provisions contained in section 51 of the General Municipal Law are very broad was discussed also in *Matter of Ihrig* v. *Williams* (*supra*). There a taxpayer invoked the privilege of inspection of the records of the department of water supply. The lower court, at Special Term, refused to grant a writ. (102 Misc. 1.) The Appellate Division (181 App. Div. 865, affd. 223 N. Y. 670, *supra*) reversed the lower court, holding that reports of engineers or other employees of the city, although not evidence against the city, as admissions or otherwise, still such papers might afford a taxpayer information with respect to witnesses that might be material to enable the applicant to prosecute an action. The court held the language of the section sufficiently broad to include inspection of the reports referred to. This decision is particularly in point as to the right of petitioner to inspect in the instant proceeding before this court. The *Ihrig* case was recently cited with approval in the *Matter of Brooklyn Bridge Freezing & Cold Stor. Co.* v. *Vurmuhlen* (273 App. Div. 956) wherein the court permitted examination of documents, excluding such as were prepared by or for counsel to the City of New York.

*People ex rel. Stenstrom* v. *Harnett* (131 Misc. 75, affd. 224 App. Div. 127, affd. 249 N. Y. 606) holds that a person who desires to inspect a filed record or document, though not strictly public, yet as the basis of some official action or proceeding directly affecting or having a direct bearing on his substantial rights entitles such person to inspection. The decision pointedly remarks that public offices exist for public service.

It is unnecessary to pass on the question as to whether any person is entitled out of idle curiosity to go into the records constituting the Kardex System. The court, in *American District Tel. Co.* v. *Woodbury* (127 App. Div. 455), held that the Board of Tax Commissioners might decide whether the applicant sought inspection for a legitimate purpose. As the tax law was silent as to whether reports should or should not be kept private, the court held that as the defendants were public officers, reports filed with them were public records.

In the instant case the fact that petitioner has a legitimate interest in obtaining the desired information cannot be questioned. The situation is in nowise similar to that found in *People ex rel. Scweller* v. *Prendergast* (89 Misc. 584). There an application to inspect garnishee orders filed against city employees was denied. Petitioner, a money lender, argued the information would be useful as to extension of credit.

As said in *Matter of Egan* v. *Board of Water Supply (supra)* this is not an inquisition into the business affairs of a private corporation. It is an inquiry into the manner in which the public business has been done. Nor does the instant application come within the category of indices of marriage records kept by a city clerk. Although they are public records (*Matter of Goldsmith* v. *Hubbard,* 183 Misc. 889), still, where the petition failed to show that petitioner required the inspection for judicial or other proper purpose, inspection was denied. In the instant proceeding this court is not called upon to delineate the line of demarcation between interest and curiosity. It is sufficient that here petitioner has a present interest in preparing to try the issues of a pending certiorari proceeding.

In *Matter of Zuppa* v. *Maltbie* (190 Misc. 778) it was held that Public Service Commission had no implied power to rule that accident reports filed by gas and electric public utility corporations were confidential, so as to avoid public inspection. The court held that the common law, in absence of statutory prohibition to the contrary, and when not detrimental to the public interest, grants any person the privilege of inspection.

Records kept by the Mayor of a city, showing receipt of moneys paid by moving picture exhibitors, under ordinance, were held to be public and not private records. Not only right of inspection, but right to take extracts was permitted. (*Matter of Becker* v. *Lunn,* 200 App. Div. 178, *supra*.)

Respondent has cited in support of his position *People ex rel. Woodill* v. *Fosdick* (141 App. Div. 450) and *Matter of Lord* (167 N. Y. 398). The lower court in *Matter of Ihrig* v. *Williams* (102 Misc. 1, *supra*) relied on the ruling in the *Woodill* case in refusing to grant a writ. The ruling of the lower court was reversed. (181 App. Div. 865, affd. 223 N. Y. 670.) In view of the later decision in *Matter of Egan* v. *Board of Water Supply* (148 App. Div. 177, affd. 205 N. Y. 147) already cited, distinguishing as it does the *Woodill* case, it cannot be said that the facts in the instant proceeding are in any way similar. Nor was the situation in *Matter of Lord* similar, as pointed out by the opinion in the *Egan* case.

An assessor, like a bill collector, is seldom greeted with open arms. Many persons complain and few are satisfied. Nevertheless, the assessor is the servant of the taxpayer. Neither his office, nor even the city, could exist were it not for the taxpayer.

If respondent here possessed an encyclopedic memory, or a brain with such retentive qualities as would permit recording

information given him by taxpayers until occasion demanded its use, he might escape divulging the substance of such information. In the instant proceeding, however, the assessor transcribed the information upon the cards of the Kardex System. Thereupon, such information became and remains a part of the public records of the office. Any taxpayer having a legitimate reason for inspecting the contents of the Kardex System is entitled to do so. What portion, if any, of the information on the cards may be received or rejected by the trial court hearing the issues of the certiorari proceeding is not a question for this court to pass on.

The only remaining question to be determined is the reasonable interpretation of the following clause contained in the above-quoted section 51 of the General Municipal Law:

" * * * public records, and shall be open, subject to reasonable regulations to be prescribed by the officer having the custody thereof, to the inspection of any taxpayer."

The officer having custody of the Kardex System, as well as applications for revision, is the respondent. This court having found the aforesaid records to be public records, the respondent is directed to provide reasonably as to the hours and days within which petitioner, or its representatives, may so inspect, gather such data, or make transcripts, as may be required under all existing circumstances, and without undue hardship being imposed on respondent. The order may provide that in event the parties cannot agree as to hours and days for such inspection that this court determine the same and retains jurisdiction. On three days' notice, one party to the other, application may be made for a further supplemental order herein.

An order may be submitted in conformity with the provisions of this memorandum.