Sidney A. Fine, J.
Petitioners, the owners of various improved parcels of real property in New-York City, heretofore filed applications with the respondents, who constitute the New York City Tax Commission, for correction of the tentative assessed valuations placed on such parcels by respondents for the fiscal year 1972-1973. Appended to and made a part of such application was a statement of the income and expenses of the property for the preceding year. The applications were all thereafter disposed of, following hearings, by determinations made by respondents pursuant to compromise agreements with petitioners granting specified reductions of the assessed Valuations.
The issue here presented stems from a request made by a reporter employed by the intervenor, The New York Times Company, that respondents permit him to inspect the foregoing applications filed by petitioners, and particularly the income and expense statements appended thereto. As the predicate for its claimed right to inspect such applications and statements, the intervenor cited section 1114 of the New York City Charter which in general provides that “ All books, accounts and papers in the office of any borough president or any division or bureau thereof, or in any city administration or department or any division or bureau thereof, except the police and law department, shall at all times be open to the inspection of any taxpayer, subject to such reasonable rules and regulations in regard to the time and manner of such inspection as the borough president, administration, department, office, division or bureau may make ’ There are, in addition, other similar statutes generally granting taxpayers the right, subject to reasonable regulation, to inspect papers kept in public offices. (E.g., General Municipal Law, § 51; Public Officers Law, § 66; Education Law, § 144.)
Respondents thereupon consulted the city’s Corporation Counsel, who rendered a written opinion that all applications for correction of assessments and -statements of income and expenses submitted therewith, were subject to disclosure under section 1114 of the New York City Charter. The Corporation Counsel added, however, that because there was no court deci *211 sion directly in point, the question was “ not free from doubt ”, and that it would “ be appropriate for the Commission to delay disclosure of any statement of income and expenses in order to notify any owner that his statement is about to be disclosed The purpose of such delay, as stated by the Corporation Counsel,' would be to enable an owner to ‘ take such action as he deems appropriate to protect any interest he may have.”
In accordance with such suggested procedure, respondents notified petitioners of the intervener’s reporter’s request to inspect the applications and income and expense statements filed by petitioners. Thereupon, petitioners instituted this proceeding pursuant to CPLR article 78 to restrain respondents from disclosing to the intervenor or any other news media, or any representative thereof, the income and expense statements and other data submitted by petitioners in connection with the applications for correction of assessed valuations filed by them for the fiscal year 1972-1973.
Claiming that such income and expense statements submitted by them to respondents are of a confidential nature and constitute trade secrets, petitioners urge that those statements are not11 public records ” and do not come within the purview of section 1114 of the City Charter. They also claim that there has been a long established custom and practice on the part of the city’s Tax Commission and Real Property Assessment Department not to make such income and expense statements available for inspection to anyone other than the owner who filed such statements, or his authorized representative, and that they filed such statements in reliance on that custom and practice. They further urge that if such statements were made public, the information contained therein could be used for ulterior purposes by competitors or tenants to petitioners’ prejudice. „
An additional claim advanced by petitioners, to the effect that they were not required to submit any income or expense statements with their applications and did so voluntarily, may be readily disposed of. Thus, subdivision (3) of section 163 of the City Charter specifically requires that an application for the correction of a real property tax assessment shall specify, among other things, with certain exceptions not here pertinent,; “ all income received or accrued and all expenses paid or incurred in the operation of the property during the calendar year preceding the date of the application, or during the applicant’s fiscal year preceding the date of the application Any applicant who fails to comply with this requirement thereby *212 waives Ms right to obtain a hearing and review of the assessment from the Tax Commission, though he is not foreclosed from pursuing his remedy in the courts for judicial review of the assessment. (Matter of 749 Broadway Realty Corp. v. Boyland, 1 Misc 2d 575, affd. 1 A D 2d 819, affd. 3 N Y 2d 737; see, also, Matter of Sassano v. Lennox, 32 Misc 2d 222, 223-224.) Since petitioners here obtained hearings on their applications, and administrative review of the challenged assessments on the basis of their compliance with the requirement of section 163 of the City Charter for the submission of income and expense statements, they are in no position to claim that the submission of such statements was a gratuitous act on their part.
At a hearing held before the court with respect to the alleged custom and practice, a former member of the City Tax Commission and two employees of the city’s Beal Property Assessment Department testified, in rather general terms, that there had for many years been a practice in that department not to permit anyone other than the owner involved, or his authorized representative, to examine any papers filed in connection with an application for correction of a real estate tax valuation, whether the matter involved had already been determined, or whether it was still pending. However, these witnesses did not make it clear how many requests for inspection of such papers had been made over the years by persons deemed not to be entitled thereto. Further, they admitted that they had never been asked by any owner whether such papers would be kept confidential, and that they had never advised any owner that such papers would not be made available for public inspection.
Testimony as to the existence of such a practice was also given by an attorney specializing in proceedings for the reduction of real estate tax assessments. That attorney further testified that on a number of occasions clients furnished him with income and expense statements for submission to the Tax Commission, only on his representation that such statements would not be open to public inspection. There was, however, no direct proof that petitioners had filed the income and expense statements here involved, in reliance on the alleged custom and practice.
It seems clear that the income and expense statements filed by petitioners with the City Tax Commission, here claimed to be exempt from inspection, are squarely within the purview of section 1114 of the City Charter, which, as noted, declares that “all books, accounts and papers * * * in any city administration or department or any division or bureau *213 thereof ”, with certain exceptions not here pertinent, “ shall at all times he open to the inspection of any taxpayer ’’. That Charter provision and the other similar statutory provisions in this State have been held to reflect “ a strong legislative policy to make available to public inspection and access all records or other papers kept ‘ in a public office,’ at least where secrecy is not enjoined by statute or rule.” (Matter of New York Post Corp. v. Liebowitz, 2 N Y 2d 677, 686; Matter of Werfel v. Fitzgerald, 23 A D 2d 306, 310 [2d Dept.].) As has been aptly observed, 1 ‘ no other course under our practice and traditions is likely to afford the safeguards assured by the right of public inspection”. (See Matter of New York Post Corp. v. Moses, 12 A D 2d 243, 250 [1st Dept.], revd. on other grounds 10 N Y 2d 199.)
It has accordingly been held, in interpreting the similarly worded provisions of section 51 of the General Municipal Law, that “ Effectuation of the policy in favor of full publicity * * * demands the broadest possible interpretation of the scope and content of that section, so far as some overriding consideration of policy does not forbid ”. (Matter of New York Post Corp. v. Liebowitz, 2 N Y 2d 677, 686, supra; Matter of Egan, 205 N. Y. 147, 156.) The right of inspection conferred by such statutes “ is as broad as the language used to bestow it ”. (Matter of Egan, supra, 156.) The same rationale points to an equally broad interpretation of section 1114 of the City Charter.
The mere fact that the papers here in question were prepared by private parties rather than by a public body or officer, would not serve to exclude them from the ambit of the City Charter provision. As was observed in Matter of Egan (supra, p. 157), “ a person who sends a communication to a public officer relative to the public business cannot make his communication private and confidential simply by labeling it as such. The law determines its character — not the will of the sender.” Furthermore, the income and expense statements here involved, together with the applications to which they were appended, served as the basis for the determinations here made by the City Tax Commission reducing the tentative assessed valuations placed on petitioners’ properties. Certainly, the papers embodying the commission’s determinations were ‘ ‘ public papers ’ ’, and the papers on which those determinations were rendered likewise came within the category of ‘‘ public papers
*214 Of course, the general policy in favor of making all records and papers kept “ in a public office ” available to public inspection “may be superseded by statutes restricting the right in specific areas where secrecy outweighs the public interest in access to information concerning matters before a public official (See Matter of Werfel v. Fitzgerald, 23 A D 2d 306, 310, supra; see, also, Matter of Cherkis v. Impellitteri, 307 N. Y. 132, 141-142.) Thus, section 1114 of the City Charter specifically exempts from public inspection the records and papers of the Police and Law Departments, as well as ‘ ‘ papers prepared by or for the comptroller for use in any proceeding to adjust or pay a claim against the city or any agency or by or for counsel for use in actions or proceedings to which the city or any agency is a party or for use in any investigation authorized by this charter. ’ ’ However, the income and expense ■statements here involved do not come within any of such exempt categories.
The testimony adduced at the hearing held herein relating to the practice allegedly followed by the personnel of the city’s Real Property Assessment Department in restricting inspection of applications for correction of assessments to owners involved, or their authorized representatives, could arguably be taken as reflecting a practical construction of the pertinent Charter provision (§ 1114) by that department. However, the practical construction of a statute by public officers charged with its enforcement is a weighty factor relevant to its interpretation only “in a case of serious ambiguity”, and only if such practical construction has been “ acquiesced in by all for a long period of time ”, (Lawrence Constr. Corp. v. State of New York, 293 N. Y. 634, 643; see, also, Matter of Travel House of Buffalo v. Grzechowiak, 31 A D 2d 74, 79-80 [4th Dept.], affd. 24 N Y 2d 1034.) In the absence of such “ serious ambiguity” and “ acquiescence by all ”, the statute “must be read and given effect as it is written ” and not as such public ■officers may think “it should * * * have been written”. (Lawrence Constr. Corp. v. State of New York, supra, p. 639; Matter of Travel House of Buffalo v. Grzechowiak, supra, p. 80.)
There does not appear to be any ‘ ‘ serious ambiguity ’ ’ in the Charter provision here involved. Nor does there appear to have been “acquiescence by all” in the alleged practical construction. Thus, in Matter of Marlin Holding Corp. v. Tax Comm. of City of New York (137 N. Y. S. 2d 507 [Sup. Ct., Kings County, 1954]), a property owner successfully challenged the refusal of the City Tax Commission to permit him to inspect *215 all documents, papers and reports relating to the determination of the assessed valuations of such owner’s properties. Pointing to the broad, inclusive language of the applicable statutory provisions (former N. Y. City Charter, § 894, now § 1114; General Municipal Law, § 51), the court held, on the authority of Matter of Egan (205 N. Y. 147, 156, supra) that the right of inspection intended to be conferred by such statutes was 11 as broad as the language used to bestow it ’ ’. Certainly, that 1954 decision should at least have put the city’s authorities on notice that any administrative practice, such as that indicated by the evidence adduced at the hearing held herein, restricting inspection of records relating to applications for correction of real estate tax assessments, was in contravention of the applicable statutes.
It has been observed that there are certain kinds of papers in the custody of public officers, which are regarded as inherently confidential and exempt from public inspection, independently of any express statutory exception, because of their special nature or purpose. (See Matter of Werfel v. Fitzgerald, 23 A D 2d 306, 311, supra.) It has thus been held that, notwithstanding the broad language of statutes such as section 51 of the General Municipal Law, a municipality may properly refuse to permit public inspection of its records relating to pending urban renewal transactions, so long as the transactions involved remain ‘ ‘ inchoate and uncompleted ’ ’, because of the 1 ‘ confidential nature and evidentiary quality ” of such records at that initial stage. (Matter of Sorley v. Clerk, Mayor and Bd. of Trustees of Inc. Vil. of Rockville Centre, 30 A D 2d 822 [2d Dept.].) The court in the latter case, however, stated (p. 823), that upon consummation of the transactions involved, the records would lose ‘1 their initial confidential nature and evidentiary quality and, in the public interest, ought to be available to the examination of the persons prescribed by law.”
The papers here sought to be inspected cannot be held to be of any such special nature or purpose as would render them inherently exempt from public inspection. As noted, the matters to which such papers relate appear to have been fully consummated by the disposition of the applications submitted by petitioners for correction of the tax assessments on their properties, and the city authorities are not resisting public inspection. (Cf., also, Matter of Sanchez v. Papontas, 32 A D 2d 948, 949 [2d Dept.], where the court, pursuant to section 51 of the General Municipal Law, directed a town Board of Assessors to make available for public inspection certain pencil- *216 marked data cards relating to the appraised values of real property in the town, which had been prepared at the board’s direction and were kept on hand for review and correction in the preparation of the final assessment roll. The court stressed the public policy in favor of disclosure and noted that the disclosure would not be detrimental to the public interest or welfare, and that no “personal or private interests” were “ necessarily involved ”.)
Petitioners’ claim that the income and expense statements here in question constitute trade secrets and are entitled as such to protection against disclosure, may also be readily disposed of. The court has examined the statements in question and has concluded that the data embodied therein is not of such a confidential and privileged nature as to be regarded as ‘ ‘ trade secrets ”. In any event, it may be noted that even the privilege applicable to trade secrets is required to yield where disclosure “is essential to ascertaining the truth”, though appropriate procedures may then be in order “ to insure that unessential information is not unnecessarily disclosed, to the possible advantage of competitors ”. (See Matter of Minerals and Chems. Philipp Corp. [World Commerce Corp.], 15 A D 2d 432, 434 [1st Dept.].)
It is unnecessary to determine whether special situations may arise where a property owner might be entitled to bar a competitor from inspecting highly confidential data filed by the owner in connection with an assessment correction application, upon a showing that the competitor intended to use the data for an ulterior purpose to the owner’s prejudice. It is sufficient to note that no such situation is here presented.
It is also unnecessary to determine whether it might have been appropriate to permit petitioners to amend the applications filed by them with the Tax Commission, nunc pro tune, by withdrawing the income and expense statements appended thereto, if such applications were still pending undetermined before the commission, upon petitioners’ establishing that they had submitted such statements with their applications in reliance on the alleged custom and practice restricting inspection thereof. Appropriate relief of that kind might perhaps be warranted in such a situation to obviate any inequitable hardship resulting from a sudden change of administrative practice. (Cf. Great Northern Ry. Co. v. Sunburst Oil & Refining Co., 287 U. S. 358, 364-366.) Here, however, it is no longer feasible to permit petitioners to amend their applications by withdrawing the income and expense statements therefrom, since the *217 commission has already acted on such applications and the papers submitted therewith, by reducing the assessed valuations.
The City Tax Commission and the intervener are accordingly entitled to judgment in their favor, together with a vacatur of the temporary stay heretofore granted.