In the Matter of JOSEPHINE D. NATELSON, Respondent, against ALMERINDO PORTFOLIO, as Treasurer of the City of New York, Appellant.

Argued October 5, 1943; decided December 2, 1943.

*Ignatius M. Wilkinson, Corporation Counsel (Seymour B. Quel* of counsel), for appellant. The rule-making power conferred upon the City Treasurer by the New York City Charter extends to court and trust funds in the Treasurer's custody. In any case the Treasurer has the power to promulgate such rules if they do not conflict with any statute or court rules. (Charter, §§ 885, 981; *Gray* v. *Board of Supervisors,* 93 N. Y. 603; *Nepola* v. *City of New York,* 246 App. Div. 15; *Whitney* v. *Watson,* 85 N. H. 238; *Mills* v. *Bluestein,* 275 N. Y. 317; *Anderson County Commrs.* v. *Beal,* 113 U. S. 227; *Commissioners of Johnson County* v. *January,* 94 U. S. 202; *Matter of Yung,* 7 Cal. App. 440.) The rules promulgated by the Treasurer were reasonable and not in conflict with any provision of law or court rules. (Civ. Prac. Act, § 137; Rules Civ. Prac., rule 32; *Mills* v. *Bluestein,* 275 N. Y. 317; *Acorn Employment Service, Inc.,* v. *Moss,* 261 App. Div. 178; *Matter of Apel* v. *Moss,* 256 App. Div. 607; *Matter of Friedman* v. *Valentine,* 177 Misc. 437, 266 App. Div. 561; *Fawcus Machine Co.* v. *United States,* 282 U. S. 375; *Chicago, R. I. & P. Ry. Co.* v. *United States,* 284 U. S. 80; *People ex rel. Clapp* v. *Listman,* 40 Misc. 372, 84 App. Div. 633; *Matter of Walsh* v. *La Guardia,* 269 N. Y. 437.)

*Florence K. Dumanis* for respondent. Section 885 of the New York City Charter does not authorize the city treasurer, in his capacity of depository of court and trust funds, to promulgate rules controlling the issuance of certificates of deposit and said rules are therefore a nullity. (*Gray* v. *Board of Supervisors,* 93 N. Y. 603; *Matter of Gould,* 75 App. Div. 576; *Matter of Schmidt* v. *Chamberlain of City of New York,* 266 N. Y. 225; Rules Civ. Prac., rule 32; *Matter of Herlands,* 170 Misc. 131, 257 App. Div. 935, 288 N. Y. 708.) The rules in question are illegal, arbitrary, capricious and unreasonable. (Public Officers Law, § 66, *People ex rel. Stenstrom* v. *Harnett,* 131 Misc. 75, 224 App. Div. 127, 249 N. Y. 606; *Matter of Egan,* 205 N. Y. 147; Executive Law, § 105, subd. 2; Civ. Prac. Act, § 137; *N. Y. Southern Coal Terminal Corp.* v. *Woolley,* 35 N. Y. S. 2d 443; *Matter of Picone* v. *Commissioner of Licenses,* 241 N. Y. 157; *Matter of Executive Service Corp.* v. *Moss,* 256 App. Div. 345.)

DESMOND, J. In 1936 there was deposited with the City Chamberlain of New York, in obedience to an order of the Supreme Court, and to the credit of petitioner, then an infant, a sum of money representing the proceeds of the settlement of a lawsuit. That 1936 order for payment into court contained among other things a direction that the money should be held in the city treasury until petitioner should come of age and until the court should order it paid to her. In 1941, on her coming of age, petitioner, through an attorney, took steps toward withdrawing the money from the custody of the City Treasurer. (The City Treasurer had meanwhile, by reason of a change in the statutes, succeeded to the powers and duties of the former City Chamberlain.) Rule 32 of the Rules of Civil Practice requires that a petition to the court for the paying out of moneys theretofore deposited in court must be accompanied and supported by certain documents including a certificate of the officer holding the money showing the amount presently on deposit with him. Petitioner's attorney applied to the City Treasurer for such a certificate of amount. At the City Treasurer's office the attorney was presented with a printed form of application (for the certificate) and a separate questionnaire with seventeen questions. The attorney was told that, pursuant to rules adopted by the Treasurer, both forms had to be filled out and signed as follows: the application blank was to be signed by the petitioner and her attorney and acknowledged before a notary public, with a county clerk's certificate of the notary public's authority attached; the questionnaire, with all questions answered, was required to be signed by both petitioner and her attorney, this signing to be in the presence of a " Department Official " at the City Treasurer's office. Petitioner complied with some, but not all of these requirements. She failed to answer the questionnaire at all. She tendered to the Treasurer the application blank signed by her and her attorney and acknowledged before a notary public but lacking any county clerk's certificate; petitioner and her attorney refused also to fill in so much of the the blank space in the application form as called for a disclosure of the amount of the attorney's fee for withdrawing the fund. Because of these deficiencies in the documents the City Treasurer refused to issue the certificate. Petitioner then brought this proceeding to compel him to issue it. Special Term, consider-

ing the Treasurer's rules not unreasonable, denied the application. The Appellate Division thought otherwise and ordered the application granted, declaring that the Treasurer in dealing with these funds was an agent or officer not of the city but of the court, that it was the function of the court alone to make rules concerning the withdrawal of such funds, also that various of the Treasurer's rules conflicted with certain statutes of this State.

We·consider, first, section 885 of the New York City Charter which empowers "each head of an agency" of the city to "make rules and regulations for the conduct of his office or department and to carry out its powers and duties." The word "agency" includes the City Treasurer's office. (City Charter, § 981, subd. 2). The City Treasurer, in handling court funds is, of course, an agent and officer of the court which is constructively in custody of the funds. (See Civ. Prac. Act, § 134). Obviously, too, the court can make rules as to the care and disposition of such funds, and the Treasurer must obey such rules and certainly cannot establish conflicting rules. But the· Treasurer, while the moneys are in his hands, has administrative, not judicial, responsibilities of his own in connection with their safekeeping, even though no liability attaches to him " because of a surrender made by him in good faith in accordance with the direction of an order of * * * court " (Civ. Prac. Act, § 137). The court which puts the money into his hands expects him to deal carefully with it. As this court has said (answering a somewhat different question) : " As custodian of the moneys paid into court, the City Chamberlain is, at all times, under a duty to exercise, at least the same care and prudence which a reasonably careful man would exercise in the management of his own affairs * * * His responsibility is, it has been said, similar to that of a trustee to whom the custody and investment of trust funds have been confided " (*Mills* v. *Bluestein*, 275 N. Y. 317, 322, see, also, reference to " the trust " in Civ. Prac Act, § 135). The reasonableness and sufficiency of the Treasurer's precautions must be measured by the dangers which threaten. The City Treasurer informs us that he holds in such custody about $17,000,000, for the account of some 34,000 persons, many of them infants and few if any of whom are personally known to the Treasurer or his employees; annu-

ally the Treasurer receives about 12,500 court orders commanding him to pay out such moneys. The necessity for adopting effective procedures for ascertaining the identity of applicants is plain. In the past moneys have been fraudulently withdrawn from such custody by means of court orders based on petitions which bore forged signatures of petitioners and of notaries public. Any such imposture necessarily begins with the procurement by the intending thief of a City Treasurer's certificate as to the amount on deposit. No one has any fair reason for seeking such a certificate except the owner of the money, or his representative, or a public official. The City Treasurer's records of court funds on deposit with him are not public in the sense that, under section 66 of the Public Officers Law, transcripts thereof must be furnished to all who apply and tender the fee allowed by law. The painstaking efforts of the Treasurer to ascertain the identity of an applicant cannot be construed as an arbitrary refusal to issue a certificate to a person entitled thereto. (*People ex rel. Stenstrom* v. *Harnett,* 249 N. Y. 606, is not *contra* since it involves an absolute refusal to disclose accident reports to a person properly entitled thereto.) From all of the above we conclude that the City Treasurer has power, inherently as well as under section 885 of the Charter, to make reasonable rules not in derogation of the court's authority but in furtherance of the Treasurer's own proper purpose so to conduct his own activities with regard to these funds as to make as difficult as possible the way of any transgressor.

From the general question as to the rule-making power of the Treasurer, we pass to an examination of the specific rules and requirements held invalid by the Appellate Division. First of these is the Treasurer's demand for information as to the amount of the attorney's fee. The Treasurer tells us that such information is demanded by him " for the benefit of the court ". There is no showing that the courts have asked for or desire such information. Since this requirement has no apparent connection with the discharge of the Treasurer's duty safely to keep the funds, and since the amount of such a fee is a matter of private contract subject to the scrutiny and control of the courts under certain circumstances but in no wise the concern of the City Treasurer, we agree that this particular demand is arbitrary, unreasonable and unenforcible. The rule requiring a

county clerk's certificate of the notary public is, we think, valid and not in conflict with section 105, subdivision 2, of the Executive Law. It does not interfere with the exercise of the notary's authority but sets up a method of investigating and attesting the authenticity of the notary's signature. No statute forbids the use of such a method.

We have examined also the seventeen questions in the questionnaire. They bear no external evidence of arbitrariness and all of them seem reasonably calculated to furnish information pertinent to the Treasurer's efficient conduct of his duties as the custodian of funds paid into court.

The order of the Appellate Division should be reversed and that of the Special Term affirmed, without costs.

LEHMAN, Ch. J., LOUGHRAN, LEWIS and THACHER, JJ., concur; RIPPEY and CONWAY, JJ., dissent and vote to affirm on the ground that the administration, and withdrawal, of court funds is solely a matter for the Supreme Court (Civ. Prac. Act, §§ 134–136; rule 32 of the Rules of Civil Practice).

Ordered accordingly.