In the Matter of MARY JORDAN, Petitioner, against ALFRED R. Loos et al., Individually and Constituting the Board of Parole of the State of New York, Respondents.

Supreme Court, Special Term, Sullivan County, October 29, 1953.

*Henry Epstein* and *Daniel H. Greenberg* for petitioner.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown, John C. Crary, Jr.,* and *Edward Siegfried* of counsel), for respondents.

*Sol Rubin* for National Probation and Parole Association, *amicus curiae.*

*Whitman Knapp* for Edward R. Cass, individually and as general secretary of the American Prison Association, *amicus curiæ.*

BOOKSTEIN, J. One Joseph S. Fay has heretofore been convicted of the crime of extortion and sentenced to a term of imprisonment and confinement to Sing Sing prison. He was eligible for parole in February, 1953, and his case was considered by respondents on January 22, 1953. Respondents determined that his release on parole was not warranted and hence did not release him on parole despite his eligibility. Instead, further consideration of any possible parole was deferred until January, 1955.

On October 16, 1953, Robert F. Wagner, Jr., a candidate for Mayor of the City of New York at the approaching general election, charged that " One of Governor Dewey's closest political associates on the national scene "—" One of the most important men in the United States "—" A national figure whose every word or action carries tremendous weight throughout the country," had sought to obtain Fay's release from prison. These statements have been publicly denied by the Governor and denied under oath by respondents, but leave many men of high repute under unjust suspicion and the victims of gossip, rumor, suspicion and curiosity.

This proceeding has been instituted by petitioner for an order in the nature of mandamus to compel respondents, constituting the New York State Board of Parole, to make available to the petitioner or her attorney for inspection and copying the public records relating to the parole of Joseph S. Fay, or to make, and furnish to petitioner, a transcript of each of the written communications and record entries of oral communications relating to Fay's application for parole; or, in the alternative, to publish, disclose and make public a complete list of the names of persons, other than physicians and clergymen, communicating with the respondents for a parole on behalf of said Fay.

It is elementary and fundamental that one who is not aggrieved and has no personal interest in the outcome of the proceeding, nor a clear legal right to the relief prayed for, cannot maintain a proceeding for an order of mandamus. (*Matter of Zielinski* v. *Harding,* 177 Misc. 773.) The petition is barren of any allegation which shows petitioner to be aggrieved or to have any personal interest in the outcome of the proceeding. It is clear that she has no right to maintain this proceeding under the rule of law above stated.

To this rule there are two definite exceptions. One of these is that any citizen or resident of the State is capable of presenting to the courts his petition for the enforcement by officials of their *mandatory duties.* (*Matter of Andresen* v. *Rice,* 277 N. Y. 271, 281.)

This brings us then to a consideration of the question whether the relief sought is to compel respondents to perform a *mandatory* duty.

Section 66 of the Public Officers Law requires a custodian of public records to furnish copies thereof, upon request and upon payment of certain fees therefor.

However, the courts of this State have not held that all records kept by public officers are " public records " as regards

right of inspection. (*Matter of Blandford* v. *McClellan*, 173 Misc. 15.) Thus, in *Matter of Natelson* v. *Portfolio* (291 N. Y. 290), the Court of Appeals held that the New York City Treasurer's records of court funds on deposit with him are not " public " in the sense that transcripts thereof must be furnished to all who apply and tender the fee allowed by law. In *Matter of Egan* (205 N. Y. 147, 157), the Court of Appeals stated: " It may not be denied that there are papers concerning governmental matters which are properly treated as secret and confidential, such for example as diplomatic correspondence and *letters and despatches in the detective police service or otherwise relating to the apprehension and prosecuting of criminals;"*. (Emphasis supplied.)

Section 51 of the General Municipal Law contains a provision with reference to the right to inspect public records, which is quite analagous to the provisions of section 66 of the Public Officers Law. Nevertheless, in *Hale* v. *City of New York* (251 App. Div. 826), the copy of a police blotter report of an accident was held not to be a public record, within the contemplation of section 51 of the General Municipal Law.

" In the absence of statute the nature and purpose of the record, and, possibly, custom and usage, must be the guides in determining the class to which it belongs." (*Matter of Stenstrom* v. *Harnett,* 131 Misc. 75, 77, affd. *sub nom. People ex rel. Stenstrom* v. *Hartnett,* 224 App. Div. 127, affd. 249 N. Y. 606.)

Section 211 of the Correction Law deals with pre-parole records and section 221 thereof deals with records of prisoners released on parole. There is no provision respecting privacy of the records in section 211, but section 221 authorizes the board to make rules respecting the privacy of records; and the Board of Parole adopted rule 23 pursuant to the authority of section 221, specifically cloaking with privacy, social, physical, mental, psychiatric and criminal records of every person released on parole.

Petitioner contends that by reason of the foregoing statutory provisions and rule, there is a distinction between pre-parole records and the records of prisoners actually released on parole. She contends that pre-parole records are public records within the meaning of section 66 of the Public Officers Law and hence available to the public while conceding post-parole records are not public.

Clearly, the pre-parole records of a convict become a part of the final record of such convict, if and when he is released on parole. If petitioner's contention is sound, we would have the

anomalous situation of records which finally become cloaked with privacy when a prisoner is released on parole which records would have been public property prior to the moment when a release on parole is granted. The very purpose of section 221 would then be completely defeated.

There can have been no legislative intent to create such an anomaly. It is uncontroverted that since the institution of the parole system in this State in 1876, the records of the Parole Board have always been regarded as confidential. This has been true regardless of which political party was entrusted with the administration of the Government of our State. That this has been widely accepted and acknowledged public policy in this State is attested by the fact that it has been adhered to for so long a time, marked by the administrations of such recent Governors as Alfred E. Smith, Franklin D. Roosevelt and Herbert H. Lehman, as well as Thomas E. Dewey. It is inconceivable that our State Legislature was unaware of, or failed to accept the practice, as our approved public policy.

Moreover, this court is of the opinion that section 211 clearly demonstrates the legislative intent, that the pre-parole records shall be confidential.

The last sentence of section 211 is as follows: " Such investigations shall be made while the case is still recent, and the results of them *with all other information* shall be filed in the office of the division ' (of parole) ' so as to be readily available when the parole of such prisoner is being considered." (Emphasis supplied.)

This court construes such language, in the light of the knowledge of the public policy of this State, as a legislative intent that the pre-parole records shall be available to the State Board of Parole *only* and to no one else, so as to be available only to it when parole of a prisoner is being considered. As to what parts of the record shall be available to the public after the parole of a prisoner, the Legislature has conferred upon the Board of Parole the discretion to determine.

In the face of a statute seemingly to the contrary, the case of *Matter of Friedman* v. *Burritt* (195 Misc. 376), held certain records confidential. Section 16 of the Public Service Law provides that " All proceedings of the commission and all documents and records in its possession shall be public records ". No language could be more complete or unequivocal. Subdivision 8 of section 61 of that law provides, in part, as follows: "Every omnibus corporation is hereby required to give immediate notice to the commission of every accident to which it

shall in the course of its operations have been a party, but such notice shall not be admitted as evidence, or used for any purpose against such corporation in any action or proceeding for damages growing out of any such accident." Such report was not cloaked with privacy by the statute but was merely limited as to its use. Yet in the *Friedman* case (*supra*) the court held that the report was not a public record within the meaning of section 16 of the Public Service Law; that, in law, it was confidential, and that such a determination was well within the intendment of the Legislature.

Petitioner finally argues that if this court is of the opinion that communications sent to the State Board of Parole in connection with applications for parole of an inmate are confidential, an exception should be made in this particular case due to the circumstances thereof.

What circumstances exist which could possibly justify this court, with one stroke of the pen, striking down a system which has worked so well for over three-quarters of a century? The executive director of the National Probation and Parole Association has declared that, "The subject matter of this proceeding goes to the very heart of parole work." Indeed, in its brief, *amicus curiæ,* the National Probation and Parole Association stated: " Experience throughout the country, as found by our Association through years of contact with parole administration, is that any other rule would be destructive of the investigative responsibility of parole boards. The Model Parole Act of the National Probation and Parole Association, drafted in 1940 by a committee of the nation's leading judges and penologists provides that all information obtained by the Board shall not be disclosed directly or indirectly unless and until otherwise ordered by such Board."

Similarly, the general secretary of the American Prison Association says that it " strikes at the root of the integrity of the parole system ".

The associations as well as the respondents cite *Runyon* v. *Board of Prison Terms & Paroles* (26 Cal. App. 2d 183, 184–185), representing it to be almost identical with the instant proceeding. In that case, the California Court declared: " the courts have consistently declared that in another class of cases public policy demands that certain communications and documents shall be treated as confidential and therefore are not open to indiscriminate inspection, notwithstanding that they are in the custody of a public officer or board and are of a public nature. * * * Included in this class are documents and

records kept on file in public institutions, concerning the condition, care, and treatment of the inmates thereof, and the files in the offices of those charged with the execution of the laws relating to the apprehension, prosecution, and punishment of criminals.''

It should be obvious to all that the impartial and intelligent discharge of its duties by the Board of Parole requires it to obtain information which in many instances it can only obtain upon the assurances that such information is confidential. The entire penal and parole system would surely be jeopardized by violating such well established principles.

Surely the exigencies of a political campaign do not justify such a result! Surely courts should not become involved in political conflicts nor lend their aid to one side or the other in a political controversy!

The welfare of our society requires the rehabilitation of criminals wherever possible. Such rehabilitation depends upon the ability of our parole boards to obtain voluminous data. Without assurances to the sources of such data that their communications are confidential it would be impossible to acquire it; without it, hundreds of prisoners, now on parole, leading useful and productive lives, might still be languishing in our penal institutions. It is incredible to suggest that our enlightened administration of the penal system should suffer such a setback.

The petitioner argues that an exception be made in this proceeding because of public interest. However great might be the public's curiosity about an alleged — but unidentified — mysterious person, public curiosity should not be confused with public interest. The public interest is far better served by the preservation of a sound and well-established parole system. Indeed, this is in the best interest of the public whether or not it satisfies passing curiosity.

Should an exception be made because it is claimed in the petition that charges have been made against respondents? Nowhere is there any *factual* allegation that any charges have been made against respondents. Mr. Wagner's charge is not a charge against respondents. If it is anything, it is a charge against some unnamed individual who allegedly wrote a letter to respondents. Respondents are guilty of no wrong in any sense in receiving a letter which any citizen may choose to address to them. They do not control letter writers and have no right to refuse to receive letters from anybody. Whatever letters they may have received, and from whatever source,

pleading Fay's cause, they were ineffectual, as we have seen.

Should an exception be made because it is Fay concerning whom the alleged letter was written? This is still a Government of laws and not of men. The law should treat all men equally, whether Fay or anyone else; whether the person involved is rich or poor, powerful or weak, befriended by many or forsaken by all.

An exception made would be the opening wedge in breaking down a barrier which has existed unchallenged for over three-quarters of a century.

In the considered opinion of this court, both the public policy of New York and legislative intent, as expressed in statute would seem to require denial of this application.

Finally, some discretion is vested in the courts to decide whether a mandamus order should issue. It is my further opinion that, so far as discretion exists to grant or refuse this application, sound judgment dictates its denial.

Application denied. Petition dismissed, with costs.

Submit order.