In the Matter of ABRAHAM WERFEL, on Behalf of Himself and All Other Attorneys at Law and the General Public Similarly Situated, Respondent, *v.* MATTHEW FITZGERALD et al., as Clerks of the Criminal Court of the City of New York, Appellants.

Second Department, June 14, 1965.

*Louis J. Lefkowitz, Attorney-General (Samuel A. Hirshowitz, Mortimer Sattler* and *Joel Lewittes* of counsel), for appellants.

*Abraham Werfel,* respondent in person.

· *Per Curiam.* The appellants are Clerks of the Criminal Court of the City of New York. The petitioner is an attorney. He instituted this article 78 proceeding in the nature of mandamus to compel the appellants "to keep open during the business hours fixed by law, the docket books, dockets, informations, and files, other than those involving youthful offenders, for search and examination by any person" and "to post appropriate notices to the public informing it of the right of inspection." Instead of answering the petition, the appellants elected to move to dismiss it on the grounds of insufficiency and the lack of jurisdiction. From the order denying the motion this appeal has been taken by permission of the Special Term.

For the purposes of the appeal we must assume as true the well-pleaded allegations of the petition. We state them briefly:

The petitioner, an attorney, brings this proceeding which submits a question of common interest to all attorneys and the public. Petitioner became aware of a rule or regulation whereby the "docket books, dockets, and other files of the Criminal Court" in the custody of the appellants were not available for inspection by the general public or by attorneys, unless an attorney of record who had filed a notice of appearance desired to examine the entries of the docket book and the docket in a particular case. (As used by the parties, the term "docket book" evidently refers to the record kept by the Clerk containing the entries of the proceedings; and the term "docket" refers to the file of the papers in the proceeding.)

In March, 1963 the petitioner attempted to examine the docket book with respect to cases in which he was not the attorney of record, and the appellant Fitzgerald refused to permit the examination, although he was told by the petitioner that the docket book entries were public records. Later, in March, 1963 Judge MURTAGH (the Administrative Judge of the Criminal Court of the City of New York), in response to a letter from the petitioner, wrote that the court records were open to inspection. Thereafter, the docket book was made available to the petitioner, but the dockets were not. The petitioner has been informed by other attorneys that the appellants have refused to make available "these records" for public inspection.

In November, 1963 petitioner tried to examine the docket book relative to an arrest of one Hubert Williams — a case in which the petitioner was not the attorney of record. Petitioner sought this examination in order to arrange for the appearance of Williams as a witness in the case of James Frazier, who was represented by petitioner; Williams' address was shown in the record and the petitioner needed the address in order to subpoena

Williams. The appellant Fitzgerald refused to allow the inspection.

Both appellants continue to refuse the inspection of docket books and dockets, to the detriment of the respondents, other attorneys, and the public. The petitioner seeks relief in the form of mandamus compelling the appellants to permit the inspection of the records.

Special Term denied the motion to dismiss, holding that the records in issue were public records and accessible for examination, and that a mandamus proceeding may be commenced by any citizen of the State to enforce the duties of public officers.

Urging reversal and dismissal of the petition, the appellants depend on two points: (1) Though conceding that the docket book is a public record, they argue that the petitioner has not demonstrated that the files of the Criminal Court are open to inspection; and (2) the petitioner may not maintain this proceeding, since he is not specially aggrieved.

We note initially that the concession made by the appellants in their first point does not appear in the record; and that in the absence of an answer denying the allegations of the petition, we are presented with a tacitly admitted pleading which shows that the petitioner was not permitted on occasions to examine the docket book — a public document. Without more, the order below might be sustained, for if a pleading in part states a cause of action, it cannot be dismissed (*Lacks* v. *Lacks,* 12 N Y 2d 268, 271; *Keller* v. *Levy,* 265 App. Div. 723; *Cathedral Estates* v. *Purdy,* 207 N. Y. S. 2d 770, 774). But, in view of the basic question before us, we think that in doing so, we should be indulging in technicalities to the detriment of the public interest in the subject of this proceeding.

We are told that from a very early period the right of inspection of the records of the king's courts was common to all his subjects, a right that came to be embodied in statute. Later in the reign of Charles II, no copy of an indictment could be made without a special order of the court; yet in the case of a misdemeanor the right to a copy of the pleading was never questioned (Ann. 175 A. L. R. 1260, 1261–1262). However, English law required as a condition to inspection that the applicant show a special interest to be served (*Matter of Egan,* 205 N. Y. 147, 157).

The common law of the United States followed a somewhat different path. On the one hand, Greenleaf in his treatise (1 Greenleaf, Law of Evidence [15th ed., 1892], § 471, p. 624) has said: "But in [the] United States no regulation of this kind is known to have been expressly made; and any limitation of the right to a copy of a judicial record or paper when applied for

by any person having an interest in it, would probably be repugnant to the genius of American institutions."

On the other hand, other American courts held that records prior to trial were not available to public inspection until there were proceedings in open court, following which the records were accessible to all persons, whether they had a special interest or not (Ann. 175 A. L. R. 1260, 1267–1268).

Finally, it is stated in *Matter of Egan* (205 N. Y. 147, 157, *supra*) that in general American courts do not require a showing of special interest by a taxpayer.

In New York the Legislature has enacted statutes which define both the right of inspection of public records and the manner of the exercise of that right. First, section 144 of the Education Law provides that a public record means any book or paper or map which is the property of the State or any municipality in which any entry is made as required by law or which any public officer or employee has received or is required to receive for filing.[1]

Secondly, section 66 of the Public Officers Law reads as follows: " A person, having the custody of the records or other papers in a public office, within the state, must, upon request, and upon payment of, or offer to pay, the fees allowed by law, or, if no fees are expressly allowed by law, fees at the rate allowed to a county clerk for a similar service, diligently search the files, papers, records, and dockets in his office; and either make one or more transcripts therefrom, and certify to the correctness thereof, and to the search, or certify that a document or paper, of which the custody legally belongs to him, can not be found."

Thirdly, section 255 of the Judiciary Law reads as follows:[2] " A clerk of a court must, upon request, and upon payment of, or offer to pay, the fees allowed by law, or, if no fees are expressly allowed by law, fees at the rate allowed to a county clerk for a similar service, diligently search the files, papers, records, and dockets in his office; and either make one or more transcripts or certificates of change therefrom, and certify to the correctness thereof, and to the search, or certify that a document or paper, of which the custody legally belongs to him, can not be found." Linked with this provision is section 255-b

---

1. The all-embracing language of the statute should be construed in context with the sections of the Education Law with which it is connected and which control the disposition and destruction of public records (Education Law, §§ 140–147).

2. A similar duty is imposed on the County Clerks in the City of New York (County Law, § 925).

of the Judiciary Law which states: "A docket-book, kept by a clerk of a court, must be kept open, during the business hours fixed by law, for search and examination by any person."

Fourthly, with the foregoing statutory provisions should be read section 51 of the General Municipal Law which in part provides that, subject to reasonable regulations, a taxpayer has the right to inspect all "books of minutes, entry or account, and * * * other papers * * * filed in the office of * * * any officer, board or commission acting for or on behalf of any county, town, village or municipal corporation".

These statutes manifest in our opinion the general policy of our State "to make available to public inspection and access all records or other papers kept 'in a public office,' at least where secrecy is not enjoined by statute or rule" (*Matter of New York Post Corp.* v. *Leibowitz,* 2 N Y 2d 677, 686). Of course, reasonable regulations may be made by public officers to control the inspection (*Matter of Natelson* v. *Portfolio,* 291 N. Y. 290, 295); and the general policy may be superseded by statutes restricting the right in specific areas where secrecy outweighs the public interest in access to information concerning matters before a public official (see, e.g., *Matter of Cherkis* v. *Impellittieri,* 307 N. Y. 132 [City Charter exempted reports of Commissioner of Investigations]; *Matter of Allen,* 205 N. Y. 158 [City Charter exempted records of Board of Health]; *Hale* v. *City of New York,* 251 App. Div. 826 [City Charter exempted police blotter entries];[3] *Matter of Jordan* v. *Loos,* 204 Misc. 814, affd. 283 App. Div. 983 [Correction Law exempted parole records]; "*Fontana*" v. "*Fontana*", 194 Misc. 1042 [Domestic Relations Law exempted records of Domestic Relations Court]; *Greff* v. *Havens,* 186 Misc. 914 [Mental Hygiene Law exempted State mental hospital records]; *Matter of Coopersberg* v. *Taylor,* 148 Misc. 824 [Public Welfare Law exempted welfare payment records]; *Matter of Goldsmith* v. *Hubbard,* 183 Misc. 889 [Domestic Relations Law exempted marriage records]; *Matter of Bernkrant* v. *City Rent and Rehabilitation Administration,* 40 Misc 2d 157, affd. 20 A D 2d 682 [Administrative Code exempted attorneys' reports to City Rent Administration]).

There is also a rather vague area where it has been intimated that, even without statutory restriction, inspection may not be made of public records. Thus, it was stated in one oft-cited case that "in the absence of statute the nature and purpose of the record, and, possibly, custom and usage, must be the guides in

---

3. By statute, police blotter entries were thereafter made examinable (Public Officers Law, § 66-a).

determining the class to which it belongs " (*Matter of Stenstrom v. Hartnett,* 131 Misc. 75, 77, affd. *sub nom. People ex rel. Stenstrom* v. *Harnett,* 224 App. Div. 127, affd. 249 N. Y. 606). Some indication of the kind of papers which might be immune from examination purely because of their nature or purpose, apart from statute, is gleaned from the dictum of Judge BARTLETT in *Matter of Egan* (205 N. Y. 147, 157, *supra*): " It may not be denied that there are papers concerning governmental matters which are properly treated as secret and confidential, such for example as diplomatic correspondence and letters and despatches in the detective police service or otherwise relating to the apprehension and prosecution of criminals; but there is no such feature in the present case."

We do not think that the court records which are the subject of this proceeding fall within any traditional exemption from inspection. Once papers are filed with the Clerk of the court, the necessity for secrecy in the apprehension and prosecution of criminals is no longer present, save in those instances in which the statutes or the courts have modified the right to inspection.

The limitations by statute on absolute examination of court records do not touch this case. A court may order papers sealed and inspection prohibited except by further order of the court, sometimes by express provision of a statute (cf. Domestic Relations Law, § 235 [papers in matrimonial actions]), and sometimes by use of a power said to be inherent in the authority of the court (*Stevenson* v. *News Syndicate Co.,* 276 App. Div. 614, affd. 302 N. Y. 81). But on this record there appear to be no papers sealed by order of the court.

Appellants contend that statutory limitations are imposed by sections 205 and 206 of the Code of Criminal Procedure. These provisions deny the right of inspection of depositions taken on an information or examination before a Magistrate by any person save a Judge, the Attorney-General, the District Attorney, the defendant and his counsel, and the complainant and his counsel. However, as pointed out in *People ex rel. Willett* v. *Quinn* (150 App. Div. 813, 819), that restriction does not apply to the information itself or to the public examinations which resulted in the depositions (cf. *People* v. *Carro,* 23 Misc 2d 239). The basic difficulty with this argument of the appellants is that in the absence of an answer, or of specific allegations that the appellants relied on the authority of these statutory provisions (Code Crim. Pro., §§ 205, 206) to bar the inspection requested, we cannot infer that the papers thus excluded from view were of the character described in such provisions.

Indeed, as already noted, in the one specific instance which the petitioner alleges in his petition, the paper desired was a docket book which contained an entry of importance to a client represented by the petitioner — an address of a witness whose testimony would assist in the client's defense. Based on this allegation, we think that for a reason apart from the general right to inspect public records, the petitioner was entitled to examine the docket book. Where the defense of a person accused of a crime requires access to public records or even to records sealed from general examination, the right of inspection has a greater sanction and must be enforced (*Ex parte Uppercu*, 239 U. S. 435, 440; *Jackson* v. *Mobley*, 157 Ala. 408; *Daly* v. *Dimock*, 55 Conn. 579).

In any event, other statutes imply full disclosure, rather than restriction. Section 220 of the Code of Criminal Procedure, though not applicable to the City of New York, requires Magistrates in the State outside the city to keep full minutes of their business in a criminal docket, which shall be open to inspection. Section 221-a of the Code of Criminal Procedure prescribes that every recognizance taken by such a Magistrate, and the complaint, inquisition, affidavits, and other papers on which the recognizance is based, must be filed in the office of the Clerk of the court in 10 days.

We hold, accordingly, that files in the possession of the Clerk of the Criminal Court of the City of New York are public records which may be fully examined by any person, unless the papers have been sealed from public scrutiny by the court or by the terms of a statute. The objective of the true administration of justice is best served by the exposure of filed papers to public examination; and the fear of uneven disposition of cases is dissipated when secrecy is banished.

We do not find support for the appellants' second argument that the petitioner has not shown that he is specially aggrieved. Mandamus is the vehicle by which a public officer may be compelled to discharge a specific duty resting on him, and it has been used to obtain inspection of public records (*Matter of Ihrig* v. *Williams*, 181 App. Div. 865, affd. 223 N. Y. 670; *Matter of Becker* v. *Lunn*, 200 App. Div. 178; Ann. 60 A. L. R. 1356; Ann. 169 A. L. R. 653).

The petitioner has invoked the theory of a class action (CPLR 1005). However, the petitioner, though he is an attorney and thus a member of a class, is actually claiming relief as a citizen and a member of the public, for his theory of the proceeding is that the records he seeks are public and open to inspection by anyone. We do not think that he may sue as a member of a

class, for certainly a " class " and the " public " are mutually exclusive.

Nevertheless, though the petition may fail as a class action, it may be sustained on a different theory. One who is a citizen and resident may sometimes be permitted to institute an article 78 proceeding, even though he does not show a personal grievance or interest in the outcome (cf. *Matter of Policemen's Benevolent Assn.* v. *Board of Trustees,* 21 A D 2d 693, 694; *Matter of Jordan* v. *Loos,* 204 Misc. 814, 816, affd. 283 App. Div. 983, *supra*; *Matter of New York Post Corp.* v. *Leibowitz,* 286 App. Div. 760, 764, revd. on other grounds 2 N Y 2d 677, *supra*). Here the petition alleges direct claims by the petitioner that the appellants have acted to bar him from access to public records, and in addition, that this course of action has been pursued toward the public. These allegations invest the petitioner with sufficient standing to bring this proceeding.

Order, entered October 16, 1964, insofar as it denies appellants' cross motion to dismiss the petition as a matter of law, should be unanimously affirmed, without costs. Appellants, if so advised, may serve an answer to the petition within 20 days after entry of the order hereon.

·BELDOCK, P. J., UGHETTA, CHRIST, BRENNAN and HOPKINS, JJ., concur.

Order, insofar as appealed from, affirmed, without costs. Appellants, if so advised, may serve an answer to the petition within 20 days after entry of the order hereon.