*338 OPINION OF THE COURT
John L. Bell, J.
On January 25, 1995, Lieutenant Joseph Parrish, an employee of the Department of Correctional Services (hereinafter DOCS) assigned to Great Meadow Correctional Facility (hereinafter Great Meadow), used a DOCS computer system to obtain information about the past criminal conduct of claimant Robert Lawrence.[2] Claimant had been incarcerated for approximately one and a half years during the late 1980’s. Lieutenant Parrish gave a computer printout regarding claimant to Correction Officer Mark LaPointe. Officer LaPointe took the computer printout to claimant’s employer who, after learning of claimant’s prior criminal conduct, fired him. The instant claim ensued.
Colleen Hooper testified that, in January 1995, she was a Deputy Superintendent at Great Meadow. Her responsibilities included overseeing the security of the facility’s computer system. Before an employee was granted access to the facility’s computer system, which contained detailed information about inmates, the employee had to apply to and be approved by DOCS’ central office. Employees who were approved were given a personal password. Lieutenant Parrish had been approved to access the facility’s computer system. Deputy Superintendent Hooper did not know whether Lieutenant Parrish had received specific training regarding computer access. However, employees who received computer access clearance were instructed to read DOCS’ directive 2810, a six-page document entitled “Computer Security Guidelines”. Directive 2810 clearly prohibited employees from permitting unauthorized disclosure or dissemination of information obtained on the facility’s computers. Moreover, DOCS’ “Employees’ Manual”, which was supplied by DOCS to all its employees, stated that confidential information gained in the course of employment was not to be disclosed.
Deputy Superintendent Hooper explained that a breach of DOCS’ rules regarding computer information would result in an investigation and possible disciplinary charges. Indeed, as a result of the computer breach regarding claimant, DOCS brought disciplinary charges against and suspended both Lieutenant Parrish and Officer LaPointe. A settlement of the disciplinary charges resulted in each man losing pay and being fined.
*339 Lieutenant Parrish testified that he had been employed by DOCS since 1974 and had been granted computer access in 1991. At the time of the subject incident, he was the Watch Commander on the 3:00 p.m. to 11:00 p.m. shift. Lieutenant Parrish described Officer LaPointe as “an acquaintance, but not necessarily a friend.”[3] He recalled that Officer LaPointe told him that an ex-inmate had moved next door to him, that the ex-inmate was threatening his family and that he was worried whether such individual had a violent background. Lieutenant Parrish stated that Officer LaPointe asked him if he would check to see if the ex-inmate had “any serious crimes in his background.” Lieutenant Parrish said that he then accessed and printed the information about claimant.[4] Since he believed the information was “a matter of public record”, he thus gave it to Officer LaPointe “to put his family at ease.” Lieutenant Parrish recalled that when he gave the printout to Officer LaPointe, he told him it was “for his personal use only.”
Officer LaPointe testified that, in January 1995, he was a Training Relief Officer. He had been employed by DOCS since 1982. He was not authorized to access the DOCS computer system that contained the criminal history of inmates. Claimant and his family had moved next door to Officer LaPointe’s home in 1994 and a problem had ostensibly developed between the two families. Officer LaPointe stated that he told Lieutenant Parrish he was having a problem with an ex-inmate[5] and Lieutenant Parrish offered to supply information about such individual. Officer LaPointe related that Lieutenant Parrish stated to him that the information was “a matter of public record” and that the Lieutenant did not place any restrictions on what he could do with the information. Since Officer LaPointe knew claimant’s employer, he took the computer printout to the employer. His purpose in going to claimant’s employer was to cause claimant to be fired, and he was successful in his quest. Officer LaPointe acknowledged that as a result of his actions, in addition to the DOCS disciplinary proceeding, he was arrested and charged with unauthorized *340 use of a computer, a misdemeanor (Penal Law § 156.05). He eventually took an Alford plea to the violation of disorderly conduct.
Margit Lawrence testified that she had been married to claimant since 1983. She stated that claimant was incarcerated during the late 1980’s. At the time of his arrest and conviction, there was publicity in the local media regarding his criminal conduct. She said, however, that their children were young at such time and never learned of their father’s incarceration until the subject incident occurred in January 1995. She recalled that after he lost his job, he “paced the floor”, appeared “panicky’, and would not talk to her or their children for long periods. She characterized their daily lives as “not the same” during the months after the January 1995 incident.
Claimant acknowledged that he had been incarcerated for about a year and a half in the late 1980’s. He stated that he was “very ashamed” that he had been incarcerated and tried “very hard” to keep his past a secret. He related that although he had worked at several jobs since his release from prison, he also had been turned down for several jobs when his criminal history was revealed as part of the application process. In early January 1995, he started working at “Super Shuttle”. The job application contained no inquiry about past criminal convictions. At Super Shuttle, he was a bus monitor for handicapped children. Super Shuttle contracted with local school districts to provide transportation for handicapped children. Claimant related that in late January 1995 his boss, Mr. Doyle, told him that an “investigator” had given him information about his prior criminal conviction. As a result, he was fired from his job.
Claimant recalled that after losing his job he could not sleep and was “stressed out, nervous and scared.” He went to his family physician and also a psychologist. He became “very irritable, felt like a failure and could not function as a father or husband.” He eventually was able to secure another job in April 1995. Approximately a year later claimant and his family moved to a new neighborhood. He stated that “things got better after the move.”
Claimants allege, inter alia, that defendant negligently failed to keep confidential information concerning claimant Robert Lawrence from being wrongfully disseminated. The conduct of Parrish and LaPointe violated DOCS’ rules and, as a result, they received disciplinary dispositions. Not every wrong, however, gives rise to a private civil remedy (see, Tobin v Gross *341 man, 24 NY2d 609, 619 [“While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world”]). The alleged conduct does not fall within the parameters of recognized privacy actions (see, e.g., 2 NY PJI 224-234 [1998 Supp]), and there is no common-law action for violation of the right to privacy in New York (Waldron v Ball Corp., 210 AD2d 611, 614, lv denied 85 NY2d 803; Delan v CBS, Inc., 91 AD2d 255, 258). Claimants asserted in their claim that defendant’s conduct violated article 6-A of the Public Officers Law and that a private remedy should exist under such statute.
Article 6-A, which is entitled “Personal Privacy Protection Law”, was enacted in 1983 (L 1983, ch 652). The purposes of the law included establishing standards regarding information that State agencies could collect and maintain on individuals, providing individuals the right to access and correct their records, and prohibiting disclosure of personal information except under specified circumstances (Governor’s Mem approving L 1983, ch 652, 1983 McKinney’s Session Laws of NY, at 2790). Section 97 of the Public Officers Law sets forth the civil remedies that are available under article 6-A. Subdivisions (1) and (2) of section 97 provide for CPLR article 78 review of agency action and, in appropriate cases, an award of reasonable attorneys’ fees. Subdivision (3) provides: “Nothing in this article shall be construed to limit or abridge the right of any person to obtain judicial review or pecuniary or other relief, in any other form or upon any other basis, otherwise available to a person aggrieved by any agency action under this article.” The court reads subdivision (3) as instructing that article 6-A does not in any fashion narrow rights or remedies against State agencies that exist separate from article 6-A and that involve acts that may fall within the prohibitions of article 6-A. Subdivision (3) does not, however, explicitly create a separate right of action premised solely upon an alleged violation of article 6-A.
In the absence of an explicit statutory provision, a private right of action may nevertheless be implied (see, e.g., Madden v Creative Servs., 84 NY2d 738, 745; Oja v Grand Ch. of Theta Chi Fraternity, 257 AD2d 924). One of the three elements necessary to imply a private cause of action from a statute is that the creation of such a right would be consistent with the legislative scheme (see, e.g., Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314; Carpenter v City of Plattsburgh, 105 AD2d 295, *342 affd 66 NY2d 791).[6] Where, as here, the Legislature addressed the issue of civil remedies and chose not to clearly create a new private right of action in the statute, it would be imprudent for a court to add by implication a provision that it is reasonable to assume the Legislature intentionally omitted (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 363; see also, Yanicki v State of New York, 174 Misc 2d 149; Warburton v State of New York, 173 Misc 2d 879, 882).
Further support for not implying a private right of action is evident from the legislative history. Review of the Bill Jacket for chapter 652 of the Laws of 1983 does not reflect any intention to create a private right of action other than the specifically set forth article 78 proceeding. Moreover, references in the Bill Jacket reflect that article 6-A was understood to be similar to Federal legislation regarding information maintained by the Federal Government (see, Mem of Off of Gen Servs, July 15, 1983, Bill Jacket, L 1983, ch 652; Mem of Dept of Social Servs, July 28, 1983, Bill Jacket, L 1983, ch 652). Significantly, the analogous Federal statute specifically provides in the part of the statute setting forth civil remedies a private right of action for monetary damages when disclosure is “intentional or willful” (5 USC § 552a [g] [4]). The decision of the New York Legislature not to include a similar private right of action when such a provision existed in the Federal law that predated and to some extent served as a model for the State law cannot be reasonably deemed accidental.
Claimants’ proof at trial also suffered infirmities that preclude recovery. New York State has a policy of open access to public records, including criminal convictions (Matter of Werfel v Fitzgerald, 23 AD2d 306, 310; see, Doe v Pataki, 120 F3d 1263, 1280, cert denied 522 US 1122). While some of the information provided by Officer LaPointe to claimant’s employer was not in public records, the weight of the evidence reflected that claimant was terminated because of his prior conviction. Claimant’s prior conviction was not something for which he can claim a reasonable expectation of confidentiality or privacy. The court notes that the fact that information wrongfully gleaned from a computer system can also be found in a public source will not always preclude further analysis. The United States Supreme Court has stated: “Plainly *343 there is a vast difference between the public records that might be found after a diligent search of courthouse files, county archives, and local police stations throughout the country and a computerized summary located in a single clearinghouse of information” (United States Dept. of Justice v Reporters Comm., 489 US 749, 764). Here, however, claimant’s prior conduct and the public record of his conduct occurred within the same general geographical area as where he was living at the time of the subject incident.
Finally, claimants failed at trial to develop the assertion in their claim that a private remedy was available because defendant allegedly violated Penal Law § 156.05. A successful cause of action premised upon such a theory would have required claimants to establish the following: that the State was responsible under respondeat superior for the purported criminal conduct of LaPointe or Parrish (see, Gore v Kuhlman, 217 AD2d 890; Spitz v Coughlin, 161 AD2d 1088); that conduct violative of Penal Law § 156.05 occurred (Johnson v Botchman, 245 AD2d 423); and that a private remedy should be implied from the criminal statute (see, e.g., Oja v Grand Ch. of Theta Chi Fraternity, 257 AD2d 924, supra; Fern v International Bus. Machs. Corp., 204 AD2d 907, 909). In their trial memorandum of law, claimants did not pursue this aspect of their claim and the proof at trial was inadequate regarding such a cause of action.
The court was not persuaded that claimants met their burden of establishing a viable cause of action by a fair preponderance of the credible evidence. The claim is thus dismissed.

. The claim of Margit Lawrence is derivative. References herein to claimant are to Robert Lawrence.

. Unless otherwise indicated, quotes are from the court’s trial notes.

. The printout included details about an offense for which claimant received youthful offender status, speculation about claimant’s involvement in uncharged crimes, and information about the crime (burglary) for which claimant was incarcerated.

. Officer LaPointe indicated that he learned claimant was an ex-inmate through another computer system at the facility to which he had access. Such system, however, ostensibly only listed names of current and former inmates and did not provide any additional background information.

. The other elements are (1) whether the plaintiff or claimant is one of the class for whose particular benefit the statute was enacted and (2) whether recognition of a private right of action would promote the legislative purposes (see, e.g., Carrier v Salvation Army, 88 NY2d 298, 302).